[No. 33933. *En Banc.* June 5, 1958.]

IRA JAMES DECKER, *Respondent,* v. SUNNY FLORENCE
DECKER, *Appellant.*[1]

[1]Reported in 326 P. (2d) 332.

*Wright & Wright,* for appellant.

*Pemberton & Orloff,* for respondent.

FINLEY, J.—This is a contempt proceeding by an exwife to compel her exhusband to comply with a provision of a divorce decree which required him to pay certain community debts incurred prior to the divorce.

The basic question presented is whether the constitutional prohibition against imprisonment for debt (Art. I, § 17) bars the trial court from using contempt powers and imprisonment to enforce compliance with the aforementioned provision of the divorce decree.

The trial court emphasized the fact that the provision for payment of the community debts was a part of a *property*

*settlement, agreed upon orally by the parties.* In his memorandum opinion, the trial judge relied upon dictum in *Robinson v. Robinson, infra,* for the proposition that property settlement agreements are not enforceable by contempt; he refused to grant the requested relief to the exwife. She has appealed.

The problem presented involves considerably more than the mere fact of noncompliance with a court order. It prompts considerations other than the matter of an affront to the dignity of the court — which in itself is serious enough. Society has a vital interest in marital disputes and their adjustment by the courts. The enforceability of provisions of divorce decrees as to support and custody, particularly, involves serious problems of public policy, which should not be resolved through the simple expedient of referring somewhat automatically to previous decisions of this or other courts. Precedents must be weighed and evaluated. They are not merely to be noted or tallied numerically, as noses, for or against a particular proposition.

■ We believe the constitutional prohibition against imprisonment for debt relates to run-of-the-mill debtor-creditor relationships arising, to some extent, out of tort claims, but principally, out of matters basically contractual in nature. In such cases, the judgment of the court is merely a declaration of an amount owing and is not an order to pay. Problems of domestic relations involving alimony, support payments, property settlements, together with court orders in connection therewith, do not normally fall into the debtor-creditor category. (But see *In re Van Alstine, infra,* and *Corrigeux v. Corrigeux, infra,* for cases in which debtor-creditor relationships were present in divorce actions.)

It has been clear in this state for over fifty years that arrearages in alimony and support payments do not constitute a debt within the meaning of the constitutional prohibition. (Art. I, § 17.) Provisions as to support contained in a divorce decree simply make specific the husband's legal duty to support his wife or children. *In re Cave,*

*infra*; *Haakenson v. Coldiron* (1937), 190 Wash. 627, 70 P. (2d) 294; *Valaer v. Valaer* (1954), 45 Wn. (2d) 565, 277 P. (2d) 326. However, in cases wherein such provisions were not clearly spelled out or were not characterized as alimony or support, our decisions are in conflict.

At this point, it is necessary to analyze briefly several significant decisions of this court which have bearing upon the problem at hand.

In *State ex rel. Ditmar v. Ditmar* (1898), 19 Wash. 324, 53 Pac. 350, the divorce decree ordered the husband to pay off a mortgage on the homestead; the court awarded the wife a lien on the husband's separate property as her security. The husband refused to obey the provisions of the decree, and the wife commenced contempt proceedings against him. The trial court, after finding that the husband had the ability to pay, ordered him imprisoned until he paid off the mortgage. It appears from the court's opinion *affirming the action of the trial court* that the main contention the husband made on appeal was that the wife's exclusive remedy was to enforce her lien.

*In re Van Alstine* (1899), 21 Wash. 194, 57 Pac. 348: The wife sued for divorce; the husband cross-complained for annulment and alleged that the wife and a co-conspirator had procured a large sum of money from him through fraud. In the decree granting an annulment to the husband, the court ordered the wife and co-conspirator to repay the money. When they did not comply with the court order, the husband sought to compel them to pay through contempt proceedings. On appeal, this court said that the divorce court had no jurisdiction to *order* the repayment of the money procured by fraud; that this was a debt within the constitutional provision, and contempt would not lie to enforce payment thereof.

*In re Cave* (1901), *infra*, is the landmark case in which this court held that alimony is not a debt within the meaning of the constitutional provision.

*State ex rel. Ridenour v. Superior Court* (1933), 174 Wash. 152, 24 P. (2d) 418: The parties had agreed to a

written property settlement, which the divorce decree incorporated by reference. The settlement provided for monthly payments to the wife for specified periods of time, on specified conditions relating to her permanent employment. In its decision, this court cast doubt on the possibility of enforcing through contempt proceedings property settlement provisions contained in a divorce decree. Specifically, the reasoning of the court was that the incorporation of an agreed property settlement, by reference, was not a sufficient adjudication of alimony so that contempt would lie to enforce it. But the opinion contained the following statement: "To be enforceable by contempt proceedings, there must be a definite and unconditional *order to pay alimony as such.*" (Italics ours.)

In *State ex rel. Lang v. Superior Court* (1934), 176 Wash. 472, 30 P. (2d) 237, the parties had agreed to a property settlement which the court had adopted and incorporated by attaching it to the decree. The settlement provided that the husband should make monthly payments of fifty dollars to the wife until the sum of twelve hundred dollars had been paid; thereafter, the payments should continue until either an additional eight hundred dollars had been paid or until the wife remarried, whichever occurred first. The trial court found that this provision had been treated by the parties and the divorce court as a property settlement. Because of that finding, we said, on appeal, that there was no reason to *construe* the settlement provision. The language quoted above from the *Ridenour* case was emphasized, and the court held that a property settlement was not enforceable by contempt.

*State ex rel. Foster v. Superior Court* (1937), 193 Wash. 99, 74 P. (2d) 479: The divorce decree set out a division of the parties' property and provided that the husband should make semi-annual payments of one thousand dollars to the wife for three years. On appeal, this court concluded as a matter of law that the payment provisions were a part of the property settlement and held that contempt would not lie to enforce payment, citing *Ridenour, supra,* and *Lang, supra,* as authority.

In *Davis v. Davis* (1942), 15 Wn. (2d) 297, 130 P. (2d) 355, the divorce decree had ordered the husband to pay the wife's attorney fees, amounting to $175. On appeal, the court said:

"We are of the opinion that the reason for allowing the court to bring to its aid contempt proceedings to enforce its decree directing the payment of alimony is equally applicable to a decree directing the payment of attorney's fees and suit money."

The "alimony as such" language of the *Ridenour* case, *supra*, was strictly limited; and the *Davis* opinion, *supra*, emphasized that in a normal debt situation a judgment merely determines an amount owing, but that *in a divorce action the court has authority to order a party to pay.*

*Corrigeux v. Corrigeux* (1950), 37 Wn. (2d) 403, 224 P. (2d) 343: The divorce decree provided that the husband should make payments of $42 per month to the wife until the sum of $1,516 had been paid. Though this has the earmarks of a support provision, the court found that the actual basis for the provision had been a loan from the wife to the husband. The divorce decree was, therefore, merely a determination of an amount owing—a normal debt situation—and contempt did not lie to enforce payment.

*State ex rel. Adams v. Superior Court* (1950), 36 Wn. (2d) 868, 220 P. (2d) 1081: The divorce court inserted in the prayer of the complaint and in the court order a provision requiring the husband to make monthly payments of fifty dollars to the wife until two thousand dollars had been paid. The husband did not appear in the divorce action, and no notice of the amended complaint was given to him. On appeal, the court held that the lack of notice deprived the husband of an opportunity to be heard on the question presented by the amended complaint, and that this amounted to a lack of due process; accordingly, such provision of the decree was not enforceable by contempt. But, in reaching its decision, the majority opinion specifically disavowed the "alimony as such" language of the *Ridenour* case, *supra*, saying:

"It is sufficient if the fair import of the language clearly indicates the court intended the award was for alimony or maintenance."

There was a vigorous dissent to the holding that the lack of additional notice deprived the trial court of jurisdiction to enter an order on the amended complaint. Inherent in the dissent is the understanding that divorce actions involve more than the property interests of the parties; that the public is manifestly involved through its interest in the proper support of the wife and children; that the parties by their pleadings cannot deprive the court of its statutory power and duty to protect the public through awarding alimony, if, in the trial court's sound discretion, the situation warrants such award.

In *Robinson v. Robinson* (1950), 37 Wn. (2d) 511, 225 P. (2d) 411, the divorce decree provided that all property of the community not specifically given to the wife should be given to the husband. It later developed that a Federal income tax refund was due to the community. Under the terms of the above provision, the husband was entitled to it, but the wife refused to deliver a "consent," signed by her, which would allow the husband to use the refund as his separate property. The husband asked the court to compel delivery or to appoint a suitable person to execute the "consent" for the wife. As noted, *supra*, by way of dictum, this court said that contempt will not lie to enforce a property settlement; however, the opinion quoted *favorably* Nelson on Divorce and Annulment, as follows:

" 'To the extent that the court has the power to adjust the property rights of the parties, it can require that its mandates be carried out, either by act of the party or by directing the making of a conveyance by a representative of the court if the party fails or refuses to make it.' "

The court went on to hold that the husband was entitled to the requested relief.

*Berry v. Berry* (1957), 50 Wn. (2d) 158, 310 P. (2d) 223: The divorce decree contained a provision ordering the husband to pay the wife twelve per cent of the net income

above five thousand dollars each year. We held the provision was one for support, because the parties had so denominated it. Accordingly, contempt proceedings were appropriate to enforce payment by the husband.

The landmark case of *In re Cave* (1901), 26 Wash. 213, 66 Pac. 425, briefly mentioned above, warrants further discussion. Two questions were presented: (1) whether the courts of Washington had authority to order the payment of alimony in divorce decrees; and (2) whether, assuming such authority, the courts had the constitutional power to enforce payment of alimony through contempt and imprisonment. The court answered both questions in the affirmative. With respect to the second question, the court merely said that it is well settled in this country that alimony is not a debt within the meaning of constitutional prohibitions against imprisonment for debt. With respect to the first question, the court recognized that there was no express statutory authorization for granting alimony in divorce decrees, but noted that the legislature had given express authorization to divide the property of the parties. The court continued:

"There are no restrictions upon the court as to the manner of such disposition. It may be disposed of in a lump sum, or by installments monthly or otherwise, and subsequently reduced to a lump sum, . . . This method of disposing of the property of the parties, call it alimony or whatever name you will, has been recognized by this court in a number of cases: . . .

"In all these cases the rule was distinctly recognized that the court should make such disposition of the property as might appear just, and *whether it was denominated alimony or division of the property*, the effect was the same." (Italics ours.)

In *Loomis v. Loomis* (1955), 47 Wn. (2d) 468, 288 P. (2d) 235, the court again clearly sustained the power of trial courts to award alimony under statutory language similar to that in force when *In re Cave, supra*, was decided.

The inherent similarity between alimony and property settlements is emphasized by the foregoing decisions. Fundamentally, most decisions relative to marriage prob-

lems recognize that the trial court has a duty to protect the interests of the public in such matters, as well as the welfare of the parties—and usually this means the duty to see that the wife or children are adequately supported. This duty is made specific by the following statutory language requiring the courts to make

". . . such disposition of the property of the parties, either community or separate, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for costs, and for the custody, support and education of the minor children of such marriage." RCW 26.08.110.

Certain language in some marital-relations decisions of this and other courts appears to emphasize unduly the contractual rights of the parties in the settlement of their marital difficulties by agreement or contract. We should be slow to conclude that a trial court waives or abdicates its duty to the public when it embodies or incorporates by reference in its decree of divorce the parties' agreed settlement. By and large, a trial court does not accept a settlement agreement of the parties simply because of their contractual rights, but because its provisions seem just and equitable and in furtherance of sound public policy, *all* factors being considered. In so far as courts refuse to examine critically the technical language or nomenclature involved in the provisions of a settlement agreement to determine whether the particular provisions are in fact *support* provisions, dictated by the husband's duty to support, such courts falter in their duty to the public by according undue homage to freedom of contract.

In *Home Bldg. & Loan Ass'n v. Blaisdell* (1934), 290 U. S. 398, 78 L. Ed. 413, 54 S. Ct. 231, 88 A. L. R. 1481, Chief Justice Hughes discussed the constitutional guarantee to freedom of contract. On page 437, he quoted from a previous United States supreme court case:

" 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not

prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' "

Also, at page 434, Chief Justice Hughes said:

"Not only is the constitutional provision qualified by the measure of control which the State retains over remedial processes, *but the State also continues to possess authority to safeguard the vital interests of its people."* (Italics ours.)

▇ It is clear that the parties to a divorce action cannot foreclose the public interest in their marital responsibilities by a contract or an agreement of settlement. Marital problems involve something more fundamental than nomenclature and technical contract rights. There is no sound reason for allowing a husband to contract away his duty to support his wife and children under the guise of a "property settlement agreement."

▇ We hold that contempt proceedings are a proper remedy to enforce the court's order with respect to property settlements—whether or not the settlement was previously agreed to by the parties, so long as it is embodied or incorporated by reference in the divorce decree. The husband may be imprisoned until he complies with the court's order, unless: (1) he can show that he does not have the means to comply with the order, or (2) he can show that the particular provision sought to be enforced has no reasonable relation to his duty to support his wife and/or children.[2]

---

[2]*Bradley v. Superior Court* (1957), 48 Cal. (2d) 509, 310 P. (2d) 634, presents an example of a provision in a property settlement which, although even sounding in terms of support, had no reasonable relation to the husband's duty to support his wife. An agreed property settlement had been incorporated into the divorce decree. One of the provisions required the husband to pay the wife approximately forty per cent of his net income each and every year thereafter. In prior litigation, the husband sought to have the provision labeled *alimony* so as to modify it with changing circumstances. In construing the provision, the courts had referred primarily to the characterization given to it by, and the

In reaching a decision on the factual questions thus presented, courts should heed the advice of Judge Chadwick in his concurring opinion in *Ruge v. Ruge* (1917), 97 Wash. 51, 165 Pac. 1063 (which was reiterated by the majority in *Loomis v. Loomis, supra*):

"Society should concern itself to see that a tie that is broken between persons intolerable to each other does not become a club of revenge and hate in the hands of the one or a mill stone about the neck of the other."

■ There should be no question as to the power or authority of the divorce court to incorporate in its decree a provision like the one which the exwife seeks to enforce through contempt proceedings in the case at bar. The opinion in *Arneson v. Arneson* (1951), 38 Wn. (2d) 99, 227 P. (2d) 1016, discusses the power and authority of divorce courts regarding the handling of the community debts of the parties to a divorce proceeding, stating:

"This court, by its former decisions, is committed to the propositions: (1) that the court has the power, in determining the property available for division between the spouses, to have recourse to that logically necessary technique of the accountant who balances liabilities against assets to find net worth, . . . [citation]; (2) that the court, with a view to the position in which the parties will be left, can apply some of the property to the placing of other property beyond the reach of creditors whose claims have not yet matured (as in the payment of a mortgage on a house given to a wife as a home for the children), . . . [citation]; (3) that the court can, *as between the parties*, saddle the liabilities of the parties upon one of them as a compensating element to facilitate the division of the values in unit-type property, . . . [citation]; (4) that the court has practically unlimited power over the property, when exercised with reference to *the rights of the parties and their children. Where the power exercised by the court was reasonably within this perspective, we have up-*

intent of, the parties; accordingly, they held it to be a part of a property settlement and *not subject to modification upon change in circumstances.* When the husband defaulted in his payments, both the husband and the wife had remarried. The wife sought to enforce payment through contempt proceedings. Under those circumstances, the court recoiled at the prospect of imprisoning the husband until he complied. The court held that contempt proceedings would not lie to enforce provisions of a property settlement. See 154 A. L. R. 483-489 for a discussion of many of the previous California cases.

*held directions in the decree for the payment of creditors as being incidental to the property rights of the parties as between themselves.*

" . . .

"Wherever we have felt the result of the decree was reasonably incident to the division of the property, *as between the parties*, we have looked through the form of the words used, treating as surplusage language not literally enforcible as to third parties, and have sustained the trial court. The trial court needs broad powers to meet the infinite variety of factual situations presented to it." (Additional italics ours.)

■ In the superior court hearing, the trial court made no finding as to whether there is a reasonable relation between the provision here sought to be enforced through contempt proceedings and the duty of respondent to support appellant. This is a question of fact, all things considered, including the factor of possible defenses to the debts by the husband and wife. Respondent did not question the validity of any of the debts; and there is nothing in the record to indicate that he and appellant have any *bona fide* defenses to any or all of the debts. If, on remand, respondent can show that he and appellant have valid defenses to any of the debts, then he will have established *pro tanto* that the provision relative to the payment of community debts bears no reasonable relation to his duty to support appellant.

The cases of *State ex rel. Ridenour v. Superior Court, supra*; *State ex rel. Lang v. Superior Court, supra*; *State ex rel. Foster v. Superior Court, supra*; and other cases, whether discussed herein or not, in so far as they are inconsistent with the views expressed herein, are overruled.

The order of the trial court should be reversed, and the case remanded for further proceedings in accord with views expressed herein. It is so ordered.

DONWORTH, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

MALLERY, J. (dissenting)—The trial court has no authority to imprison a divorced spouse for failure to pay a debt owed to a third party for two reasons.

(1) The trial court had no authority to order a spouse to pay the debt. In *Palmer v. Palmer*, 42 Wn. (2d) 715, 258 P. (2d) 475, this court said:

"A divorce action is a statutory proceeding, and the court has no jurisdiction that cannot be inferred from a broad interpretation of the statutes. [Citing case.]"

The statute, RCW 26.08.110 [*cf*. Rem. Supp. 1949, § 997-11] confers this power upon the court:

". . . judgment shall be entered . . . making such disposition of the property of the parties, either community or separate, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, . . ."

The power to order a spouse to pay a debt to a third party cannot be inferred from this language of the statute, and this court cannot confer authority upon itself by its own decisions. The statutory language quoted is *not* authority to convert a divorce action into a proceeding for the liquidation of third-party debts.

We so held in *Arneson v. Arneson*, 38 Wn. (2d) 99, 227 P. (2d) 1016, in which we said:

"Divorce, probate, bankruptcy, receiverships, and assignments for the benefit of creditors are statutory proceedings, and the jurisdiction and authority of the courts are prescribed by the applicable legislative enactment. In them the court does not have any power that can not be inferred from a broad interpretation *of the act in question*. The powers of the court in probate and receiverships can not be imported into the divorce act. Whether or not the court exceeded its jurisdiction in the case at bar, must be determined from the language of the divorce act of 1949.

"Nowhere in the act is the court empowered to exercise the prerogatives peculiar to other statutory proceedings. One ready test of a proper limitation on the jurisdiction of the court, in a given case, can be applied by determining who are the necessary and/or proper parties to the action.

"The spouses are made parties to a divorce action by due process, and the state is made one by statute. The children are not parties, but, as a subject of the action, they have

been made the chief concern of both the legislature and the courts. Other persons can not be made parties to the action by any statutory form of notice, nor can they intervene therein. It would appear elementary, then, that there is no due process of law in a divorce action as to the rights of creditors of the spouses. The judgment can neither conclusively determine their rights nor be made available on their behalf as a basis for any of the provisional remedies.

"Since the divorce act nowhere provides for it, the court has no power to compel a liquidation for the benefit of creditors as an incident to a divorce decree. Nor can any of the statutory proceedings, having that as its purpose, be consolidated with a divorce action for trial. Nothing can be found in the divorce act authorizing the court to deprive the spouses of their rights to prefer creditors, claim exemptions and/or homesteads, compromise claims, take bankruptcy, invoke statutes of limitation, make contracts, and enjoy their property rights. Their several interests in the property are, of course, determined, *as between themselves*, by the decree, and are subject to the burdens imposed upon them therein for purposes within the scope of the divorce act. As to the common-law rules of jurisdiction, we know of none which empowers the court to encroach upon civil rights simply because persons are parties to a divorce action."

The ex-wife asks the court to imprison the husband if he does not pay an unliquidated claim to a third-party creditor, who has no judgment. He was not and could not be a party to the divorce action and has no property right in the decree. His own action for debt, if he ever brings it, may be barred by the statute of limitations, and, in any event, will be subject to all valid defenses.

The divorce court cannot give the creditor a judgment nor make the provisional remedies available to him. Even between the spouses, there can be no ruling upon their indebtedness for any purpose other than as an incident to the disposition of their property.

The court's order to pay the debt, an issue that was not and could not be before the court in a divorce action, was void, and, hence, cannot under any circumstances sustain a contempt proceeding.

470

(2) The constitutional objection to the contempt proceeding is valid. Even if we assume there is a debt, it is owed to a party not privy to the action, and, hence, it cannot be for alimony. There is no escape from the application of Art. I, § 17, of the state constitution, because no definition of debt, however artful, can invoke the statutory provision for alimony in this case.

I dissent.

HILL, C. J., and OTT, J., concur with MALLERY, J.

August 18, 1958. Petition for rehearing denied.

---

[1] Reported in 326 P. (2d) 340.