[No. 34283. *En Banc.* October 1, 1959.]

LENA BRANTLEY, *Respondent,* v. ROBERT BRANTLEY, *Appellant.*[1]

[1]Reported in 344 P. (2d) 731.

*Kane & Spellman* and *Gordon R. Tobin,* for appellant.

*Jack Steinberg,* for respondent.

FINLEY, J.—In a default divorce decree, which did not specifically mention, or award, alimony to the plaintiff wife, the defendant husband, Robert Brantley, was ordered by the divorce court on April 30, 1956, to pay debts of the marital community, totaling $202.59. He did not do so.

On January 24, 1957, at the instance of Lena Brantley, the plaintiff wife, a further order of the court was entered. This order, in effect, held that Robert Brantley was in contempt of court for failure to pay the aforementioned obligations. It ordered that he be arrested by the sheriff for King county, and be held in jail until he complied with the previous order requiring payment of the community obligations. The defendant husband has appealed.

The contempt proceedings involved herein transpired in the superior court, and the first hearing in the supreme court respecting this appeal occurred prior to our decision in *Decker v. Decker* (1958), 52 Wn. (2d) 456, 326 P. (2d) 332. From the discussion of the comparable problem in the *Decker* case, it should be clear that the trial court's order respecting contempt and imprisonment of defendant Robert Brantley in the instant case is not *ipso facto* in violation of our constitutional prohibition against imprisonment for nonpayment of debts. The community creditors certainly were not parties to the original divorce proceeding; furthermore, these creditors were not parties in the contempt proceedings. Thus, they have never been before the trial court and are not now in the supreme court seeking to imprison the defendant husband for nonpayment of obligations or debts due and owing to them.

 In a situation such as this—where a husband is ordered to pay or liquidate financial obligations of a defunct marital community which is itself about to be liquid-

ated or terminated as a legal entity by the divorce court —we are convinced that the husband should and may be punished for contempt for disobedience in the same manner as if he had been ordered to deliver children of the community into the custody of the wife and had failed so to do. Relative to refusal to comply with a lawful order of court, RCW 7.20.110 provides:

"Imprisonment until act performed. When the contempt consists in the omission or refusal to perform an act which is yet in the power of the defendant to perform, he may be imprisoned until he shall have performed it, and in such case the act must be specified in the warrant of commitment."

The Washington territorial legislature, in 1854, authorized the arrest of defendants in connection with numerous kinds of litigated cases. Laws of 1854, p. 145; Code of 1881, p. 116; *cf.* Remington's Compiled Statutes of 1922, § 749. This legislation has been emasculated substantially (a) by judicial decisions from the early case of *Burrichter v. Cline* (1891), 3 Wash. 135, 28 Pac. 367, through *Bronson v. Syverson* (1915), 88 Wash. 264, 152 Pac. 1039, implementing Art. I, § 17, of the constitution; and (b) by legislative repeal in 1927; Laws of 1927, ch. 153. In view of this, however, it seems to us to be of some significance that the legislative provision or purpose implicit in RCW 7.20.110 has survived and is in full force and effect today. We are convinced, as indicated in *Decker v. Decker, supra,* that Art. I, § 17, of our constitution, simply was not designed to thwart or prevent a proper exercise of the equity power and discretion of our divorce courts.

In this connection there seems to be little basis in fiction, and none in fact, to justify a legally significant conclusion that the prohibitions in other states and in our own against imprisonment for nonpayment of debts resulted from public dissatisfaction and demand against activities of divorce courts in connection with their efforts to resolve marital disputes. According to the North American Review of

April, 1831: 3,000 persons in Massachusetts, 10,000 in New York, 7,000 in Pennsylvania, 3,000 in Maryland, were imprisoned for debts—ostensibly arising out of run-of-the-mill creditor-debtor relationships. The total in the northern and middle Atlantic states was approximately 50,000. We think it is a fair and reasonable inference that the situation in our country, as well as the not pleasant or inspiring history of English-debtors prisons, provided the significant motivation for constitutional provisions prohibiting imprisonment for nonpayment of debt. Thus, in terms of historical context and perspective, there would seem to be little or no correlation between the action of the divorce court in the instant case and the provisions of Art. I, § 17, Washington state constitution, prohibiting imprisonment for nonpayment of debts.

One of the underlying factors—not emphasized too clearly in the opinion in *Decker, supra,* but a factor which was considered and was grist for the mill in the *Decker* result— is brought to light and clearly emphasized in 34 Wash. L. Rev. 193, as follows:

"The scope of the constitutional prohibition against imprisonment for debt might be approached in a slightly different manner than it was in the *Decker* case. Historically, relief in the courts was either at law or in equity. If a plaintiff obtained a judgment at law, then he had a choice of two means to enforce that judgment: *in rem* or *in personna.* If he chose the former means of enforcement, then he could execute on the defendant's property to satisfy his judgment. If he chose the latter means of enforcement, then he could obtain the writ of *capias ad satisfaciendum,* which was an execution against the person of the defendant, under which he was held in custody until the judgment was satisfied. Only executions against the person of the defendant in enforcement of judgments at law were prohibited by the constitution. If the party obtained relief in equity, the court would order the defendant to perform some act. The order decreed by the equity court would be enforceable by contempt proceedings, even in modern times, since the constitutional prohibition against imprisonment for debt did not pertain to equitable decrees. Since

an order in a divorce decree has the mandatory effect of an order of an equity court, the opinion in the *Decker* case correctly stated that the distinction lies between judgments which declare 'an amount owing' and decrees which order payment, and that only the former are subject to the constitutional prohibition in question."

In *Decker, supra,* the decision clearly emphasized that, in determining whether a particular provision in a divorce decree providing for the payment of money bears a reasonable relationship to a husband's duty to support his wife and children, the courts should look to the substance of the provision rather than to its form. Contrary to this thinking and the principle inherent therein, there is the view that in the instant case certain *technical considerations* or *matters of form* lead to and support the conclusion that the provision sought to be enforced cannot bear a reasonable relationship to the husband's duty to support. These technical considerations or matters of form, apparently, would be the pleadings and the *label* placed on the award by the trial court. But contrariwise, once again, the holding of this court in the *Decker* case, *supra,* rejected the thesis that there is some magic in the names or words: *Alimony, property settlement,* or *child support.*

It should be clear from our holding in the *Decker* case that the fact that there was no prayer in the complaint for alimony is not controlling; nor should it be particularly significant that the trial court, in making the award, did not specifically denominate it either as "alimony" or "property settlement." Actually, the significant question to be determined is whether the provision that the court seeks to enforce by contempt proceedings, regardless of the name given it, bears a reasonable relationship to the husband's duty to support his wife and children. If it does, it does not fall within the constitutional prohibition against imprisonment for debt.

Here, just as in the *Decker* case, it is not possible for this court to make the necessary factual determination. Consequently, this case should be remanded for further

proceedings in conformity with the views discussed and the result reached in *Decker*.[2] It is so ordered.

WEAVER, C. J., DONWORTH, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (dissenting)—The order to pay debts, with which we are here concerned, is invalid because it violates Art. I, § 3, of the state constitution, which provides, *inter alia*:

"No person shall be deprived of . . . property, without due process of law."

An order in a divorce action directed to a community debtor to pay his debt to one of the parties to the action is invalid for want of due process, since the debtor is not and cannot be a party to a divorce action. This is for the conclusive reason that the existence of a debt and defenses thereto are an independent issue of fact and law upon which a debtor has a right to have his day in court. For this same identical reason a party to a divorce action has a right to due process regarding community debts, and he cannot have it in the divorce action because the community creditor is a stranger to the action.

The constitutional right to due process makes it impossible for a divorce action to serve as a liquidation proceeding as to creditors and debtors who cannot be parties thereto. *Arneson v. Arneson*, 38 Wn. (2d) 99, 227 P. (2d)

---

[2]In the *Decker* case, among other things, we made the following critical observations, which may be pertinent in the instant case:

"In the superior court hearing, the trial court made no finding as to whether there is a reasonable relation between the provision here sought to be enforced through contempt proceedings and the duty of respondent to support appellant. This is a question of fact, all things considered, including the factor of possible defenses to the debts by the husband and wife. Respondent did not question the validity of any of the debts; and there is nothing in the record to indicate that he and appellant have any *bona fide* defenses to any or all of the debts. If, on remand, respondent can show that he and appellant have valid defenses to any of the debts, then he will have established *pro tanto* that the provision relative to the payment of community debts bears no reasonable relation to his duty to support appellant."

1016. Orders relating to accounts receivable and debts are binding *only as between the parties* and do not adjudicate any rights or provide any remedies between them and strangers to the action. The defendant has only had his day in court as to the divorce. He has a right to assert his defenses to the debts in an action constituting due process on that issue. The order in the divorce action to pay the debts is invalid.

The order of imprisonment for contempt also is invalid because it violates Art. I, § 17, of the state constitution, which provides, *inter alia*: "There shall be no imprisonment for debt . . ."

It is not the prerogative of the court to change the universally accepted meaning of the English language. We are here concerned with an order for the payment of *debts* and an order of imprisonment for contempt of court.

I reject the law review theory that the court has a right to order a defendant in a divorce action to pay a debt. From that premise it reasons that a defendant is in contempt of court when he does not obey the order, and the court has a right to imprison him for the contempt. This is put upon the ground that the constitutional prohibition against imprisonment for debt does not apply to contempts, and the imprisonment is for the contempt of court and not for the debt.

I prefer the theory that the constitutional prohibition against imprisonment for debt deprives the court of the power to make any order respecting a debt if the contemplated method of enforcement is by imprisonment.

I also reject the theory of the majority that

". . . where a husband is ordered to . . . liquidate . . . obligations of a . . . community . . . the husband . . . may be punished for contempt . . . in the same manner as if he had been ordered to deliver children . . . into the custody of the wife . . ."

We have repeatedly held that the court has only such powers in divorce actions as specifically conferred upon it by statute.

RCW 26.08.110 confers plenary powers upon the court in matters relating to custody of children in divorce actions. As to the property of the parties, it provides only that

" . . . judgment shall be entered . . . making such disposition of the property of the parties, either community or separate, as shall appear just and equitable . . ."

I find no statutory authority in this language to convert a divorce action into a liquidation proceeding for the benefit of creditors.

The order of contempt should be reversed. I dissent.

HILL and OTT, JJ., concur with MALLERY, J.