72 P.3d 780 (2003)
117 Wash.App. 602
STATE of Washington, ex rel. Dawn L. DALY, Appellant,
v.
Marshall R. SNYDER, Respondent.
No. 50964-1-I.
Court of Appeals of Washington, Division 1.
July 14, 2003.
Denis A. O'Leary, Seattle, WA, for Appellant.
Joseph Chalverus, Attorney At Law, Seattle, WA, for Respondent.
BAKER, J.
The State appeals a superior court order finding that incarceration was not one of the remedies available under the court's contempt powers to enforce payment of arrearages owed for child support when there is no current, ongoing child support obligation. Because the purpose of incarceration is to compel compliance with a court order and not imprisonment for debt, we hold that incarceration for an arrearage-only case is constitutional, and reverse.

I
Melanie Snyder was born in 1983. In 1987, the superior court entered a default judgment against Marshall Snyder establishing his paternity. The court also ordered that he pay Melanie's mother, Dawn Daly, $300 per month for child support and entered a judgment against him for past unpaid support and medical expenses.[1]
Melanie reached majority in 2001. The State has attempted to compel payment through contempt proceedings since before she reached majority.[2] Currently, Snyder owes Daly $33,915.00 in arrearages. Snyder has no continuing obligation for child support. The State has continued to compel Snyder's payment of the debt pursuant to chapter 26.18 RCW.
In January 2002, a court commissioner found Snyder in contempt of court for failing *781 to pay support arrearages, and ordered him to report to jail unless he paid $300 to the court.[3] Snyder sought review by a superior court judge. The reviewing judge found that absent a continuing obligation, incarceration was not available for enforcing payment of child support arrearages. The State appeals.

II
The State argues that a superior court may use its full powers of contempt, including incarceration, to compel compliance with arrearage only child support orders. Snyder argues that the superior court has no such authority because incarcerating him for an arrearage-only debt amounts to imprisonment for a debt, an act prohibited by both the Washington and U.S. Constitutions.[4]
Contempt can be civil or criminal. The underlying goal of a civil contempt order is to compel compliance of a court's order.[5] A contempt sanction involving imprisonment remains coercive, and therefore civil, if the contemnor is able to purge the contempt and obtain his release by committing an affirmative act.[6] Here, the contempt order contained a purging clause, and was civil in nature because Snyder could avoid confinement by paying $300.
A coercive sanction is justified only on the theory that it will induce a specific act that the court has the right to coerce. Accordingly, there must be a showing that the contemnor has the means to comply with the order. And should it become clear that the civil sanction will not produce the desired result, the justification for the civil sanction disappears.[7] Further incarceration can be justified as a punishment for disobeying the court's orders, but only after a criminal proceeding.[8]
The court's contempt power must be used with great restraint.[9] As the U.S. Supreme Court has noted, "the contempt power also uniquely is liable to abuse."[10] Thus, a contemnor should be incarcerated only when no alternatives appear available for coercing obedience to the court's order.[11]
Former RCW 26.08.110 (1949), repealed by Laws of 1973, ch. 157, § 30, provided in relevant part that "the court ... shall make provision for ... the custody, support and education of the minor children of such marriage."[12] In Dawson v. Dawson,[13] our Supreme Court interpreted the statute as conferring contempt power on the court until the youngest child reached majority.[14] More significantly, the court reasoned that its jurisdiction was "predicated upon the continued dependency of minor children."[15]
Prior cases relied on by the Dawson court also limited the court's contempt power because the court's jurisdiction under the statute ceased when the child reached majority.[16] *782 For example, in Poland v. Poland,[17] the court determined that a contempt order entered against the father was valid. The court went on to explain that the court's jurisdiction in child support cases terminated when the child reached majority:
The jurisdiction of the court in divorce cases, where alimony is awarded for the support of children, is a continuing one, and the jurisdiction of both the parties and the subject-matter continues so long as there is a minor child whose welfare and maintenance are provided for in the decree.[18]
While prior cases had implicitly relied on the statute to confer jurisdiction to the court, Dawson explicitly relied on the limitations imposed by former RCW 26.08.110. But the Legislature amended that statute in 1993 to provide the court with continuing jurisdiction indefinitely.[19]
The amended child support statute allows the superior court to retain continuing jurisdiction after current duties of support have ceased:
The court retains continuing jurisdiction under this chapter until all duties of either support or spousal maintenance, or both, of the obligor, including arrearages, have been satisfied.[20]
The statute explicitly allowing superior courts to use contempt to enforce support or maintenance orders now states:
As provided in RCW 26.18.040, the court retains continuing jurisdiction under this chapter and may use a contempt action to enforce a support or maintenance order until the obligor satisfies all duties of support, including arrearages, that accrued pursuant to the support or maintenance order.[21]
Although the statute does not specifically mention incarceration, this power is included in the general contempt statute,[22] and nothing indicates that it does not apply to contempt proceedings under RCW 26.18.050.
Snyder argues that the statute cannot be read to allow imprisonment for past obligations because "arrearages" in the statute modifies "all duties of support" and does not stand alone. We rejected this argument in State ex rel. Wulfsberg v. MacDonald.[23]
In Wulfsberg, we examined a court's contempt power for unpaid child support. Like this case, the child support order at issue in Wulfsberg involved an obligation for arrearages where no current support was due. The court first examined Dawson and held that the underlying statute had been superceded by RCW 26.18.050(5). The court then determined that under RCW 26.18.050(5), "the [trial] court's contempt authority to enforce child support arrearages extends past a child's majority and dependency."[24] But the court refused to consider "whether imprisonment is a sanction available to the court where the child is emancipated."[25]
Snyder argues that allowing imprisonment for arrearage-only child support is unconstitutional because both the Washington and U.S. Constitutions contain provisions prohibiting incarceration for a debt.[26]
*783 In Decker v. Decker,[27] our Supreme Court held that contempt proceedings were a proper remedy for enforcing court orders. The court also explained that as long as there was a valid decree, the court had the power to imprison the defaulting party "until he complies with the court's order, unless: (1) he can show that he does not have the means to comply with the order, or (2) he can show that the particular provision sought to be enforced has no reasonable relation to his duty to support his wife and/or children."[28]
Our Supreme Court later clarified this rule in Brantley v. Brantley,[29] explaining that underlying its decision in Decker was an implicit understanding about the difference between the court's equitable power to enforce its orders relating to debts and the prohibition against enforcing debts against a person.[30]
The Brantley court distinguished contempt orders intended to compel payment of back child support from "debts" in the constitution:
Historically, relief in the courts was either at law or in equity. If a plaintiff obtained a judgment at law, then he had a choice of two means to enforce that judgment: in rem or in persona. If he chose the former means of enforcement, then he could execute on the defendant's property to satisfy his judgment. If he chose the latter means of enforcement, then he could obtain the writ of capias ad satisfaciendum, which was an execution against the person of the defendant, under which he was held in custody until the judgment was satisfied. Only executions against the person of the defendant in enforcement of judgments at law were prohibited by the constitution. If the party obtained relief in equity, the court would order the defendant to perform some act. The order decreed by the equity court would be enforceable by contempt proceedings, even in modern times, since the constitutional prohibition against imprisonment for debt did not pertain to equitable decrees. Since an order in a divorce decree has the mandatory effect of an order of an equity court, the opinion in the Decker case correctly stated that the distinction lies between judgments which declare "an amount owing" and decrees which order payment, and that only the former are subject to the constitutional prohibition in question.[31]
Thus, relief may be in equity, or at law. At law remedies included judgments against property (in rem) or against the person (in personam). Enforcement of in personam debts by incarcerating the defendant is prohibited by both the Washington and U.S. Constitutions. But enforcement of equitable orders through the use of contempt is permitted because a contempt order is an attempt by the court to compel the defendant to comply with the court's prior, lawful, equitable order. It is not imprisonment for a debt, but rather imprisonment for refusing to comply with the court's equitable order to do or not do something.
We hold that the court's authority to use contempt proceedings against recalcitrant child support obligors extends beyond the age of the child's majority, and includes incarceration.
Reversed and remanded.
WE CONCUR: COX, A.C.J., and ELLINGTON, J.
NOTES
[1] The amount of the judgment was $14,400.00.
[2] For example, in December 2000 the State brought a motion for Snyder to show cause regarding his contempt of the court's order.
[3] There is no evidence in the record showing that Snyder is able to pay the $300. But Snyder does not raise this issue.
[4] See Washington State Constitution, Art. I, § 17; U.S. Constitution, amend. XIII, § 1.
[5] Smith v. Whatcom County Dist. Court, 147 Wash.2d 98, 105, 52 P.3d 485 (2002) ("The primary purpose of the civil contempt power is to coerce a party to comply with an order or judgment.") (quoting State v. Breazeale, 144 Wash.2d 829, 842, 31 P.3d 1155 (2001)).
[6] In re Interests of M.B., 101 Wash.App. 425, 439, 3 P.3d 780 (2000), rev. denied, 142 Wash.2d 1027, 21 P.3d 1149 (2001).
[7] M.B., 101 Wash.App. at 440, 3 P.3d 780.
[8] M.B., 101 Wash.App. at 440, 3 P.3d 780 (citing In re Pers. Restraint of King, 110 Wash.2d 793, 802-04, 756 P.2d 1303 (1988)).
[9] M.B., 101 Wash.App. at 439, 3 P.3d 780.
[10] Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).
[11] In re Pers. Restraint of King, 110 Wash.2d 793, 802, 756 P.2d 1303 (1988).
[12] See Dawson v. Dawson, 71 Wash.2d 66, 67, 426 P.2d 614 (1967).
[13] 71 Wash.2d 66, 426 P.2d 614 (1967).
[14] Dawson, 71 Wash.2d at 68, 426 P.2d 614.
[15] Dawson, 71 Wash.2d at 67, 426 P.2d 614.
[16] See, e.g., Ditmar v. Ditmar, 48 Wash.2d 373, 374, 293 P.2d 759 (1956) (recognizing that "[t]he court's jurisdiction to enforce support-money judgments is predicated upon the continued dependency of the children in question.").
[17] 63 Wash. 597, 116 P. 2 (1911).
[18] Poland, 63 Wash. at 600, 116 P. 2.
[19] See RCW 26.18.040 (granting court continuing jurisdiction until all duties of child support or maintenance are satisfied).
[20] RCW 26.18.040(3).
[21] RCW 26.18.050(5).
[22] RCW 7.21.050; see also RCW 7.21.010(3) (defining remedial sanction as "sanction imposed for the purpose of coercing performance....").
[23] 103 Wash.App. 208, 11 P.3d 333 (2000), rev. denied, 143 Wash.2d 1010, 21 P.3d 291 (2001).
[24] Wulfsberg, 103 Wash.App. at 211, 11 P.3d 333.
[25] Wulfsberg, 103 Wash.App. at 211, 11 P.3d 333.
[26] U.S. Constitution, amend. XIII, § 1 ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."); Washington State Constitution, Art. I, § 17 ("There shall be no imprisonment for debt, except in cases of absconding debtors.").
[27] 52 Wash.2d 456, 326 P.2d 332 (1958).
[28] Decker, 52 Wash.2d at 465, 326 P.2d 332.
[29] 54 Wash.2d 717, 344 P.2d 731 (1959).
[30] Brantley, 54 Wash.2d at 720, 344 P.2d 731.
[31] Brantley, 54 Wash.2d at 720-21, 344 P.2d 731 (quoting 34 Wash. L.Rev. 192, 193 (1959)) (emphasis added).