[No. 55149-3-I. Division One. June 6, 2005.]

BRITANNIA HOLDINGS LIMITED, *Respondent*, v. BERNARD G. GREER ET AL. *Appellants*.

*Patricia S. Novotny*, for petitioners.

*Chad Allred* and *Michael R. McKinstry* (of *Ellis, Li & McKinstry, P.L.L.C.*), for respondent.

¶1 ELLINGTON, A.C.J. — In June 2002, Britannia Holdings Limited obtained an $11 million judgment against Bernard and Judith Greer for securities fraud and initiated proceedings to collect the judgment. In September 2004, the trial court held the Greers in contempt for disobeying multiple orders to deliver assets and to provide a credible accounting. The court gave the Greers four months to deliver $635,000 to Britannia or be jailed for contempt. The court also ruled that a trust created by Bernard Greer's father had lost its character as a spendthrift trust and ordered execution on the trust assets. The Greers appeal both orders.

¶2 We affirm the order of execution on the spendthrift trust because the trust had lost its protected character. We hold the contempt order did not violate the constitutional prohibition against imprisonment for debt. But we reverse the contempt order because the contemnor must hold the keys to his release, and the court made no finding that the Greers had the present ability to pay the purge amount.

## BACKGROUND

¶3 Bernard Greer ran an investment company called Alistar Capital, which bought and sold interests in high-risk companies. In July 1998, Alistar and Britannia entered into an investment management agreement. After Greer

was unable to account for $6.1 million of funds Britannia had placed with Alistar for investment purposes, Britannia sued Alistar and Greer, alleging fraud, and obtained a judgment of $11 million, which was upheld on appeal.[1]

¶4 Britannia has been actively attempting to enforce the judgment through supplemental proceedings pursuant to chapter 6.32 RCW. The trial court entered an order requiring the Greers to deliver money and property to the King County sheriff. The Greers deposited promissory notes relating to loans made to their daughter Nan and to a Nicaraguan charity they had established, Alistar Nicaragua, but claimed they had no further assets. The court also ordered the Greers to provide Britannia with information and documents. The court made further orders for a full accounting on July 8, 2003, and November 14, 2003. The Greers responded to these orders by claiming they have no control over any further assets because the funds are held either in a trust of which they are not the beneficiaries (the Rainbow Trust) or by a charity over which they have no control (Alistar Nicaragua). But in April 2004, Britannia was able to examine 30 boxes of documents and computer equipment seized by the sheriff from the Greers' Issaquah home. Evidence gleaned from these documents and records bring the Greers' assertions regarding their lack of assets into serious doubt.

¶5 On September 29, 2004, the trial court found that after the 2002 judgment against them, the Greers "had control over at least $635,000 and, rather than paying any of this money to Britannia or the Court, transferred the money away [to Nicaragua and Belize]."[2] The court found that the Greers knowingly disobeyed court orders entered in March, July, and November 2003.[3]

---

[1] *Britannia Holdings Ltd. v. Greer*, noted at 116 Wn. App. 1029 (2003), *review denied*, 150 Wn.2d 1038 (2004).

[2] Clerk's Papers at 2066.

[3] The court also found the Greers in contempt of an order entered on September 20, 2003, but this order was directed at the Greer's daughter, Nan, who was later dismissed from the action on jurisdictional grounds.

¶6 The court held the Greers in contempt. The order provides that:

the GREERS can PURGE themselves of the present contempt BY PAYING to Britannia care of Britannia's attorneys SIX HUNDRED THIRTY-FIVE THOUSAND DOLLARS ($635,000), which represents funds transferred in violation of this Court's Judgment and Orders; and

. . . .

If by February 1, 2005, the GREERS have not purged themselves [by paying $635,000], they shall turn themselves in to the KING COUNTY SHERIFF on that date and the Sheriff shall imprison them until further Order of this Court.[4]

¶7 The court also granted Britannia's motion for execution on the Bernard L. Greer Revocable Trust, a spendthrift trust established by Greer's father in 1967. We granted discretionary review and stayed enforcement of the contempt order.

## DISCUSSION

¶8 The Greers claim that imprisonment as a contempt sanction is unconstitutional in these circumstances. They further claim the order violates due process because they do not have the present ability to purge the contempt.[5] Finally, they contend the court erred in ordering execution on the spendthrift trust.

■■ ¶9 *Imprisonment for Debt.* The Greers first argue that an order subjecting a debtor to incarceration for failure to pay moneys constitutes imprisonment for debt, in violation of article I, section 17 of the Washington Constitution: "There shall be no imprisonment for debt, except in cases of absconding debtors."

---

[4] Clerk's Papers at 2069-70.

[5] On March 14, 2005, the trial court entered additional findings, conclusions, and an order regarding the contempt order, including finding a present ability to pay and setting a different purge amount. Permission for final entry of this order as required by RAP 7.2(e) has been granted. We undertake no review of this order.

¶10 This prohibition resulted from our fierce determination to avoid the debtors' prisons of England and the Eastern states.[6] It has long been settled, however, that coercive imprisonment for contumacious refusal to obey a lawful order to pay money is not imprisonment for debt.

¶11 In *In re Habeas Corpus of Cave*,[7] Cave refused to pay $447 in alimony and attorney fees to his ex-wife. The trial court determined that the $447 was in Cave's possession and control, and when he continued to refuse to pay, the court found Cave in contempt and ordered him imprisoned. The Washington Supreme Court affirmed, holding that the finding that Cave possessed the money but refused to comply with the order to pay "gave the court authority to punish by immediate imprisonment until the order was complied with."[8] Although *Cave* involved nonpayment of alimony,[9] the Washington Supreme Court later observed that:

> [T]he real ground of the [*Cave*] decision is that imprisonment can be used as a means of coercing the performance of the order of the court; to compel the defendant to do a thing which was in his power to do; not as a punishment for failure to satisfy a judgment of alimony.[10]

¶12 Further, in *Brantley v. Brantley*, the court examined the historical context of enforcement of judgments by a writ of execution against the person of the debtor, resulting in

---

[6] *Brantley v. Brantley*, 54 Wn.2d 717, 720, 344 P.2d 731 (1959) (noting that in 1831 approximately 50,000 people were imprisoned in the northern and mid-Atlantic states for "debts—ostensibly arising out of run-of-the-mill creditor-debtor relationships").

[7] 26 Wash. 213, 215, 66 P. 425 (1901).

[8] *Id.* at 216.

[9] The constitutional prohibition is inapplicable in the family law context because orders from dissolution courts sound in equity rather than law and because public policy requires ensuring support of the family of divorcing spouses. *Brantley*, 54 Wn.2d at 720-21.

[10] *Bronson v. Syverson*, 88 Wash. 264, 272, 152 P. 1039 (1915). *See also Ryan v. Kingsberry*, 88 Ga. 361, 14 S.E. 596, 599-600 (1891) (coercive contempt in supplemental proceedings to collect a judgment does not offend constitutional prohibition against imprisonment for debt).

the debtor's imprisonment until the judgment was satisfied, holding that " '[o]nly executions against the person of the defendant in enforcement of judgments at law were prohibited by the constitution.' "[11]

¶13 The goal of civil contempt proceedings is to compel compliance with a court order.[12] Exercise of the contempt power is authorized by chapter 7.21 RCW, which permits imprisonment to coerce obedience of any lawful order.[13] The supplemental proceedings statute also specifically provides for use of contempt powers.[14] The fact that the contumacious behavior is disobedience of an order entered in supplemental proceedings does not transform

---

[11] *Brantley v. Brantley,* 54 Wn.2d at 717, 720, 344 P.2d 731 (1959) (quoting Frank J. Woody, Washington Case Law–1958, *Domestic Relations: Property Settlement Agreements–Contempt–Imprisonment for Debt,* 34 WASH. L. REV. 192, 193 (1959)). *See also In re Estate of Ward,* 159 Wash. 252, 261, 292 P. 737 (1930) (contumacious refusal to deliver money to an estate held subject to order of coercive contempt; court noted that the action was not one to collect a judgment).

[12] *Smith v. Whatcom County Dist. Court,* 147 Wn.2d 98, 105, 52 P.3d 485 (2002) (" 'The primary purpose of the civil contempt power is to coerce a party to comply with an order or judgment.' ") (quoting *State v. Breazeale,* 144 Wn.2d 829, 842, 31 P.3d 1155 (2001)).

[13] RCW 7.21.010 provides: "(1) 'Contempt of court' means intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court; . . . [r]efusal, without lawful authority, to produce a record, document, or other object."

RCW 7.21.030 states, in relevant part:

(2) If the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose one or more of the following remedial sanctions:

(a) Imprisonment . . . [which] may extend only so long as it serves a coercive purpose.

[14] Disobedience of an order is punishable as contempt:

A person who refuses, or without sufficient excuse neglects, to obey an order of a judge or referee made pursuant to any of the provisions of this chapter, and duly served upon him, or an oral direction given directly to him by a judge or referee in the course of the special proceeding, or to attend before a judge or referee according to the command of a subpoena duly served upon him, may be punished by the judge of the court out of which the execution issued, as for contempt.

RCW 6.32.180. *See also Allen v. Am. Land Research,* 95 Wn.2d 841, 844-45, 631 P.2d 930 (1981); *Graves v. Duerden,* 51 Wn. App. 642, 649-50, 754 P.2d 1027 (1988); *Rainier Nat'l Bank v. McCracken,* 26 Wn. App. 498, 512, 615 P.2d 469 (1980); *Brantley,* 54 Wn.2d at 720.

the proceedings into an execution against the person of the defendant.

¶14 Where a court orders a party to deliver money or property in supplemental proceedings and the party is able but refuses to comply, a remedial contempt order imposing imprisonment does not violate the constitutional prohibition against imprisonment for debt.

■ ¶15 *Validity of the Contempt Order Here.* A contempt sanction involving imprisonment remains coercive, and therefore civil, only if the contemnor is able to purge the contempt and obtain his release by committing an affirmative act. In other words, the contemnor "carries the keys of his prison in his own pocket" and will be released upon obeying the order.[15] Accordingly, there must be a showing that the contemnor has the means to comply. Coercive incarceration loses its coercive character and becomes punitive where the contemnor cannot purge the contempt.[16] This violates due process.[17]

¶16 The Greers argue they are presently unable to pay the purge amount and that the court's failure to so find renders the order invalid. Britannia responds that the burden was upon the Greers to demonstrate they could not comply and that they failed to do so.

¶17 It is well settled that " 'the law presumes that one is capable of performing those actions required by the court . . . [and the] inability to comply is an affirmative defense.' "[18] But exercise of the contempt power is appropriate only when *the court finds* that the person has failed

---

[15] *In re Interests of M.B.*, 101 Wn. App. 425, 439-40, 3 P.3d 780 (2000).

[16] *Id.* at 439; *State ex rel. Daly v. Snyder*, 117 Wn. App. 602, 606, 72 P.3d 780 (2003) (citing *M.B.*, 101 Wn. App. at 440); *see also Carlton v. Carlton*, 44 Ga. 216, 220, 1871 WL 2661, at *3 ("The imprisonment must be clearly for the contempt of the process of the Court, and be of one who is able and unwilling to obey the order of the Court. . . . The moment it appears that there is *inability*, it would clearly be the duty of the Judge to discharge the party.").

[17] *M.B.*, 101 Wn. App. at 439-40.

[18] *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (alteration in original) (quoting *In re Pers. Restraint of King*, 110 Wn.2d 793, 804, 756 P.2d 1303 (1988); *see also State ex rel. Smith v. Smith*, 17 Wash. 430, 432, 50 P. 52 (1897)

or refused to perform an act that *is yet within the person's power to perform.*[19] Thus, a threshold requirement is a finding of *current* ability to perform the act previously ordered.

■ ¶18 Although there is evidence to support the court's finding that the Greers were contumacious,[20] the trial court failed to make a finding that the Greers had a *present* ability to pay the purge amount. Instead, the court found the Greers had, in 2002, possessed $635,000 and had "transferred the money away."[21] This is not a finding that *at the time of the contempt order in 2004*, they could purge the contempt. We must therefore reverse, because without this finding,[22] the contempt was not coercive but impermissibly penal.[23]

■ ■ ¶19 We do not, however, agree with the Greers' contention that the court must identify a specific fund from which the purge amount must be paid. None of the cases cited by the Greers limits the court's power in such a way. Although control of sufficient assets must be established, neither due process nor RCW 6.32.080 requires the court to identify a specific fund. Similarly, there is no basis for the Greers' assertions that Britannia must pursue collection

---

("The rule is that the burden of showing inability to comply with an order of this nature is upon the respondent.").

[19] RCW 7.21.030(2) (emphasis added).

[20] Despite the Greer's claims that they have no assets remaining, they never requested an evidentiary hearing to litigate this contention. Like the trial court, we have proceeded upon the written record.

[21] Clerk's Papers at 2066.

[22] Britannia points to finding of fact 16 as a finding of present ability to pay. The finding states: "One or more of the Greers' violations of the Judgment and Orders is ongoing and the Greers each have failed or refused to perform acts ordered by the Court that are yet within their power to perform." Clerk's Papers at 2068. This not a finding of present ability to pay money. The court's prior orders require various acts by the Greers, including providing an accounting. Thus, the ability to pay may or may not be the subject of the court's finding. This is not enough.

[23] The Greers argue to this court that they are entitled to an evidentiary proceeding. This argument should be addressed to the trial court on remand.

efforts via the Uniform Fraudulent Transfer Act[24] prior to initiating supplemental proceedings.

¶20 Affirmed in part, reversed in part and remanded.

¶21 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.

BAKER and BECKER, JJ., concur.