[No. 10349.    Department Two.    July 19, 1912.]

THE STATE OF WASHINGTON, *on the Relation of John G. Olding et al., Respondent,* v. SAMUEL STAMPFLY, *Appellant.*[1]

WATERS AND WATER COURSES—APPROPRIATION—PUBLIC LANDS—SCHOOL LANDS—RESERVATIONS IN TERRITORY. School lands in a territory reserved by the Federal government for the use of the common schools of the future state are public lands of the United States, within the rule that the waters of streams on public lands are subject to appropriation under the acts of Cong. 14 Stat. at L. 253, and 16 Id. 218, granting the right as to all public lands generally.

JUDGMENT—CONCLUSIVENESS—PERSONS CONCLUDED. A judgment against the holder of a contract for the purchase of land from the state, determining his right to the waters of a stream, is conclusive upon one deriving his title through the grantee of the state, to whom the contract holder assigned the contract.

CONTEMPT—VIOLATION OF JUDGMENT—WATER RIGHTS. Where a deed conveyed one-half of the waters awarded to a party by a decree, the grantee is guilty of contempt in violating the decree if he uses more than half of the quantity fixed by the decree.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered October 31, 1911, adjudging a party guilty of contempt in violating a judgment, upon a hearing before the court. Affirmed..

[1] Reported in 125 Pac. 148.

*Pruyn & Hoeffler*, for appellant.
*Mires & Whitfield*, for respondent.

Fullerton, J.—On December 1, 1891, one John Clifton
entered into a contract with the state of Washington for
the purchase of the southwest quarter of section 16, in town-
ship 18, north, of range 19, east of the Willamette Meridian,
agreeing to pay therefor the sum of $3,600, in ten annual
installments of $360 each, with interest on the deferred pay-
ments at the rate of six per centum per annum. The lands
are riparian, so to speak, to a perennial stream, known as
"Nanum Creek," which stream when left in its natural state
flows over and across the lands in a well defined channel.
Clifton settled on the lands prior to the time he contracted
to purchase the same from the state, and from the time of
his earliest settlement used water from the stream for the
purposes of irrigating them. Other settlers on lands ripa-
rian to the stream, some of whom were prior and some of
whom were subsequent in time to Clifton, also used water
from the stream for irrigating purposes, which use gradu-
ally increased until all the water of the stream was so taken
and used.

In August, 1897, differences arose between these users as
to their respective rights, and an action was begun by one
James Ferguson, as plaintiff, to determine such rights, in
which all persons using water from the creek or thought to
have rights therein were made parties defendant, among whom
was John Clifton. Clifton answered the complaint in the
action, setting up his possession of this particular quarter
section and his right thereto in virtue of his contract with
the state, averring that he had diverted water from Nanum
creek and used the same in irrigating such land as early as
1885, and laid claim to a specific quantity thereof based on
his appropriation and rights acquired thereunder. The ac-
tion was subsequently tried out, and on May 6, 1901, a
decree was entered therein in which the rights of all the

landowners to the use of water from the creek were adjudi-
cated and determined; Clifton being awarded the right to
divert and use for irrigating the quarter section described
a fixed quantity thereof.    Subsequent to the trial of the
action, Clifton assigned his interests in the contract to one
John Crocker, who procured a deed for the lands from the
state to himself on 'October 10, 1902.    Thereafter and on
October 3, 1904, Crocker conveyed to Samuel Stampfly, the
appellant in the present proceeding, the north half of such
quarter section, "together with an undivided one-half of the
waters awarded to the S. W. ¼ of Sec. 16, Twp. 18, R. 19,
E., by the decree entered in the case of James Ferguson v.
The United States Bank et al.," being the decree herein-
before referred to.

Subsequent to his purchase of the property, Stampfly used
water from Nanum creek in excess of one-half of that awarded
Clifton in the decree mentioned, conveyed to him by the deed
from Crocker.    Proceedings in contempt were instituted
against him, charging him with violating the provisions of
the decree; and on a hearing had thereon, he was adjudged
guilty of contempt, and sentenced to pay a fine.    From the
judgment and sentence, this appeal is prosecuted.

The appellant contends that the water rights appurtenant
to the land purchased by him from Crocker were not legally
determined by the decree in the case of Ferguson v. United
States National Bank et al.    Attention is called to the fact
that this court has held in *Benton v. Johncox,* 17 Wash. 277,
49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107, and *Nesalhous
v. Walker,* 45 Wash. 621, 88 Pac. 1032, that the common
law doctrine of riparian rights prevails in this state with
reference to streams flowing across lands not public lands of
the United States, and that such streams cannot be diverted
from their natural courses by mere prior appropriation to
the detriment of owners of such lands; and it is argued that
school lands, reserved by the government of the United
States for the use of the common schools of the state that

may be organized out of the territory in which the reserved lands lie, are not public lands of the United States; and hence, any stream to which they may be riparian is not subject to appropriation, but on the contrary such streams are appurtenant to the land and pass to the state with the cession of the land to the state, and from the state to its grantees, who may lawfully make such use of the streams as the rules governing riparian ownership will permit, without regard to the claims of prior appropriators; contending further that, since the land in question was school land, ceded to the state of Washington on its admission into the Union without reservation of any kind, the state took title to the land with all of its appurtenances, which title the appellant has since acquired; and since the state was not estopped from claiming the water either because of prior appropriation of the same or by the terms of the decree—not by the prior appropriation because the water was not capable of being taken by prior appropriation since the lands were not at the time public lands of the United States, and not by the decree because the state was not a party thereto—it could convey these rights to the appellant.

But plausible as these contentions may appear, we do not think them conclusive, for a number of reasons. In the first place, we cannot agree with the contention that streams of water riparian to government lands reserved as school lands could not be diverted by appropriation. It is true that the government has, from the earliest times, sought to reserve in its territories certain sections in every township of land for the benefit of the common schools of the states that may be formed out of such territories; but, in so far as we are aware, these reservations have never been thought to be irrevocable or as conferring on the future states any rights in the land antedating their actual cession to the state, but on the contrary have always been thought to be subject to such laws and changes in the laws regulating the primary disposition of the soil as the Congress chose to enact. It is a

matter of history that it has been the custom of the people from the earliest times to go upon a stream or other source of water supply on the public domain and divert therefrom and appropriate to private uses such water as the necessities of the appropriators required, and that by another custom the rights of conflicting claimants in the same source of supply were determined by priority of diversion and use. Although the practice may not have had in its inception the recognition of the government, it early met therewith. By the act of Congress of July 26, 1866 (14 Stat. at Large, 253), it was provided that:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

And by the act of July 9, 1870, 16 Stat. at Large, p. 218, it was further provided:

"All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued water-rights, or rights to ditches and reservoirs used in connection with such water-rights, as may have been acquired under or recognized by the preceding section."

These statutes, it will be observed, are general in their application and apply to all government lands. No exception is made in favor of lands reserved for the benefit of the common schools of future states, and it is clear that none was intended; but on the contrary it was intended that rights in waters riparian to such reserved lands could be acquired by appropriation in the same manner that such rights were

acquired in waters riparian to the public lands generally. It follows therefrom that the appellant in the case at bar has no superior right to the water in question, in virtue of the fact that his land was school land held in reserve by the United States for the benefit of the future state of Washington at the time the waters of Nanum Creek were first appropriated for the purposes of irrigation.

The conclusion we have reached on the question stated, although it denies the appellant's right to use the waters of the creek named for irrigation purposes as against prior appropriators, does not necessarily subject him to the punishment the court inflicted upon him. While he can be prevented in a proper proceeding from making use of the water as against those who have superior rights, he cannot be adjudged in contempt for so doing unless he is in privity with and bound by the decree in the Ferguson case. As to this question, it is our opinion that he is so bound. Notwithstanding the fact that he derives his legal title through John Crocker, who was the immediate grantee of the state, it is plain that the equitable title and beneficial interest in the property came to Crocker from John Clifton, the holder of the contract for the purchase of the land from the state. And since Clifton was a party to the decree and bound thereby, his assignee was likewise bound; and being so bound, the assignee could not convey any greater interest to the appellant than he himself held. That no attempt was made to convey any greater interest than that fixed by the decree is evidenced by the deed itself. By the express terms of the deed, the quantity of water conveyed is limited to one-half the quantity of water that was awarded to John Clifton by the decree mentioned. We conclude that the appellant is bound by the decree, and was justly punished for violating it. The judgment is affirmed.

ELLIS, MOUNT, MORRIS, and GOSE, JJ., concur.