[No. 8435–3–III.   Division Three.   May 31, 1988.]

WEYLAND T. GRAVES, ET AL, *Plaintiffs,* v. RALPH C. DUERDEN, ET AL, *Respondents,* LOUIS MUSSO III, *Appellant.*

---

*John Heath* and *Witherspoon, Kelley, Davenport & Toole,* for appellant.

*Steven Hughes* and *Woodward & Hughes,* for respondents.

THOMPSON, A.C.J.—Attorney Louis Musso III, appeals a judgment holding him in contempt. We affirm.

This appeal arises from a transaction involving real estate in Pend Oreille County. Weyland T. and Cherie R. Graves, who are not parties in this appeal, purchased a home from Ralph C. and Mary Kay Duerden, respondents here. The purchase money promissory note called for the Graveses to pay $859 monthly. Soon after the sale, the Graveses brought a lawsuit against the Duerdens for damages in connection with the sale. The Graveses stopped making monthly payments to the Duerdens, but paid the money instead to the trust account of Brigham & Musso, P.S. Mr. Musso, who represented the Graveses, is a principal in that firm. In a trial memorandum, Mr. Musso stated:

> Plaintiffs first consulted counsel in July, 1984; this action was filed October 25. All monthly payments of Eight Hundred Fifty–Nine Dollars ($859.00) have been made to the Brigham & Musso, trust account, where Eleven Thousand Seven Hundred Thirty–One Dollars ($11,731.00) awaits disposition by the Court.

Based on the Graveses' nonpayment, the Duerdens counterclaimed for foreclosure of the deed of trust.

After a bench trial, the court ruled for the Duerdens, rejecting all of the Graveses' claims, and entered findings and conclusions and judgment on April 18, 1986. Finding of fact 19 stated:

> The Plaintiffs are current in their payments to Defendants. Since December of 1984, all payments due under the Note and Deed of Trust, have been paid to the Brigham & Musso, P.S., Trust Account. No disbursements have been made from that account to Defendants.

Without mentioning the Duerdens' counterclaim, the court in a conclusion of law stated:

> The Defendants are entitled to payment of all monies held in the Brigham & Musso, P.S., Trust Account, their taxable costs, and reasonable attorney's fees.

The judgment stated:

> It Is Hereby Ordered, Adjudged and Decreed that Judgment should be entered in favor of the Defendants, Ralph C. and Mary Kay Duerden, husband and wife, against the plaintiffs, Weyland T. and Cherie R. Graves, husband and wife, in the amount of $14,603.00, said sum representing the amount of Contract payments paid into the Trust Account of Louis Musso, III; Judgment in the amount of $7,000.00 in reasonable attorneys' fees and $118.18 representing taxable costs incurred in the defense of this matter.

After entry of the judgment, the Duerdens obtained a writ of garnishment against Mr. Musso personally for payment of the judgment against the Graveses. Mr. Musso responded by declaring: "Garnishee, Louis Musso III, neither holds nor controls any funds of Plaintiffs". Mr. Musso argued later that the money technically was held in his firm's trust account, not by him personally, and that his purpose in refusing to relinquish the money was to give his clients "as much time as possible to consider what their options were". The Duerdens then obtained a second writ of garnishment, directed to the firm of Brigham & Musso, P.S., which Mr. Musso never answered.

Mr. Musso later stated that he had been asked by another attorney, who planned to file a bankruptcy petition on behalf of the Graveses, to "wait until the last minute" to answer the second writ of garnishment. The other attorney also suggested that Mr. Musso had a possessory lien against the funds, and that Mr. Musso should pay himself for his services at that time.

On August 5, 1986, Mr. Musso transferred $5,770.23 from the trust account to his firm's account for payment of attorney fees and expenses. His trust account ledger shows that various other payments were made from the account, and Mr. Musso acknowledged in an affidavit directed to the bankruptcy court that trust account funds were used during the course of litigation to pay for depositions, contractors' reports, and other expenses.

On August 8, 1986, the Graveses filed a chapter 7 bankruptcy petition. The next month Mr. Musso transferred $500 from the trust account to his firm account for payment of attorney fees and expenses. On October 3, 1986, at the request of the Graveses' bankruptcy attorney, Mr. Musso closed the trust account by sending the balance ($6,264.49) to the other attorney to be placed in that firm's trust account.

On motion of the Duerdens, the bankruptcy court lifted its automatic stay in November 1986, holding that the Graveses had no interest in the money paid into the Brigham & Musso, P.S., trust account. The Duerdens then obtained the $6,264.49 previously paid by Mr. Musso to the Graveses' bankruptcy attorney.

On December 9, 1986, the Duerdens filed a motion with supporting affidavits seeking an order directing Mr. Musso to show cause why he should not be held in contempt for his failure to comply with the judgment entered on April 18, 1986, and with the writ of garnishment served on him on July 24, 1986. The order to show cause was filed on December 22, with hearing set for January 15, 1987. The matter was referred to Spokane County Superior Court and the hearing was held before Superior Court Judge Luscher.

On February 3, 1987, Judge Luscher entered a judgment of contempt against Mr. Musso. Judge Luscher found specifically that the findings, conclusions and judgment entered on April 18, 1986,

> required attorney Louis Musso, III, to pay all monies held by him in the Brigham & Musso, P.S. trust account to the Defendants Ralph & Mary Kay Duerden. The Findings, Conclusions and Judgment were clear and unambiguous with respect to the ownership of the trust funds by the Duerdens.

Judge Luscher further found and concluded that Mr. Musso was in contempt for failure to pay the funds to the Duerdens, and for refusal to answer the writ of garnishment; that Mr. Musso had no authority to pay himself or others from the trust account; and that such payments violated the April 18, 1986 judgment. Judge Luscher's judgment found Mr. Musso in contempt for violation of the order requiring him to disburse funds in the trust account to the Duerdens, for violation of the garnishment statute by refusing to answer the writ, and for wrongful payment of trust funds to himself and others without authorization. The judgment of $13,760 represented the amount taken from the trust account, plus interest and attorney fees, minus the amount returned as the result of action taken by the bankruptcy court. Mr. Musso was given until February 15, 1987, to purge himself of the contempt. When Mr. Musso failed to purge himself, the judgment was amended to add $1,152 for attorney fees and costs incurred by the Duerdens after entry of the original contempt judgment.[1] This appeal followed.

---

[1] In oral argument, counsel for the Duerdens suggested that the trial court entered two separate contempt judgments, only one of which has been appealed. An examination of the record reveals that the court's original contempt judgment (dated February 3, 1987) was amended on March 3, 1987, based on the court's order of the same day, in which reconsideration was denied. The March 3 judgment is not a separate contempt decree, but is merely an amendment of the original decree. Although Mr. Musso's notice of appeal designates only the February 3 judgment, we address here the March 3 amended judgment. *See* RAP 2.4(b). As a result, the total judgment under consideration is $14,912.

The sole issue is whether the trial court erred in finding Mr. Musso in contempt. There are three grounds on which a court may exercise contempt powers:

(a) criminal contempt prosecuted under RCW 9.23.010; (b) civil contempt initiated under RCW 7.20.010 *et seq*; and (c) contempt proceedings resulting from the long–exercised power of constitutional courts . . .

*Keller v. Keller,* 52 Wn.2d 84, 86, 323 P.2d 231 (1958). Before a court may utilize its inherent powers, the statutory basis must be shown to be inadequate. *State v. Boatman,* 104 Wn.2d 44, 48, 700 P.2d 1152 (1985). On appeal, a court will uphold a contempt order if any proper basis can be found. *Boatman,* at 46.

■ Here, the remedy imposed by the trial court is not specifically provided by the two statutory provisions. The court clearly was exercising inherent contempt power, which it may use:

(1) to punish summarily contemptuous conduct occurring in the presence of the court, (2) to enforce orders or judgments in aid of the court's jurisdiction, and (3) to punish violations of orders or judgments.

*Keller,* at 86.

Washington courts have consistently applied a "strict construction" rule for interpretation of judicial decrees, violation of which provides the basis for contempt proceedings:

In contempt proceedings, an order will not be expanded by implication beyond the meaning of its terms when read in light of the issues and the purposes for which the suit was brought. The facts found must constitute a plain violation of the order. *State v. International Typographical Union,* 57 Wn.2d 151, 158, 356 P.2d 6 (1960); 17 C.J.S. *Contempt* § 12 (1963).

*Johnston v. Beneficial Mgt. Corp. of Am.,* 96 Wn.2d 708, 712–13, 638 P.2d 1201 (1982).

The purpose for this rule is to protect persons from contempt proceedings based on violation of judicial decrees

that are unclear or ambiguous, or that fail to explain precisely what must be done. *See International Longshoremen's, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 19 L. Ed. 2d 236, 88 S. Ct. 201 (1967) ("unintelligible" decree "defie[d] comprehension"); *State v. International Typographical Union,* 57 Wn.2d 151, 356 P.2d 6 (1960) (act complained of not specifically prohibited by decree).

Here, Judge Luscher specifically found that the April 18, 1986 judgment required Mr. Musso to pay the money in his firm's trust account to the Duerdens. However, the judgment does not include such an express order. Therefore, the judgment holding Mr. Musso in contempt for failure to pay the funds to the Duerdens was based on an untenable ground.

While there is no basis for the conclusion that Mr. Musso was specifically directed to pay the funds to the Duerdens, there is a substantial basis for the court's interpretation that the money in Mr. Musso's trust account belonged to the Duerdens. Mr. Musso himself, in his trial memorandum, stated that the trust fund "awaits disposition by the court". The trial court's findings, drafted by Mr. Musso himself, stated that the Duerdens "are entitled" to the funds in the trust account. The original judgment made no mention of the Duerdens' counterclaim against the Graveses for foreclosure, for the reason that the Graveses were not in default, having made their monthly payments to the trust account. The bankruptcy court agreed the money in the trust account was not the property of the Graveses.

Viewing this judgment "in light of the issues and the purposes for which the suit was brought", *Johnston,* at 713, there can be no rational interpretation but that the money in the trust account, representing payments by the

Graveses on their purchase money promissory note, was the property of the Duerdens.[2]

Mr. Musso argues that the Duerdens' application for a writ of garnishment is inconsistent with this conclusion. While the Duerdens could have chosen a different approach to obtaining the funds from Mr. Musso,[3] there is no authority for the proposition that choice of remedy in any way affects the parties' ownership interest.

Mr. Musso also argues that, where the contempt determination is made by a judge other than the judge who entered the original decree, the reviewing court should examine more carefully the original decree. *See Johnston,* at 715 n.4. There is no room for doubt here that, while the judgment did not expressly require Mr. Musso to pay the money in his firm's trust account to the Duerdens, the Duerdens were entitled to and actually owned the funds.

For this reason, we reject Mr. Musso's reliance on RCW 60.40.010, which creates a lien for compensation of an attorney "(2) upon money in his hands *belonging to his client*". (Italics ours.) Mr. Musso's clients had no interest in the trust account, and Mr. Musso had no right to use these funds to pay himself.

Our conclusion that the April 18, 1986 judgment placed ownership in the Duerdens also establishes the basis for upholding the trial court's contempt finding. The court's order was not a punishment for *violation* of that order, but rather was a legitimate exercise of the court's inherent

---

[2]At his request, we have permitted Mr. Musso to supplement the record with an order from the original trial judge clarifying the original judgment. This clarification does not conflict with our analysis here.

[3]The parties appear to agree that RCW 4.44.490 provides an alternate remedy. However, in light of Mr. Musso's interpretation of the judgment, the dispute in either case would have involved the same issues. Furthermore, the Duerdens could have asked for default judgment for failure to answer the second writ. RCW 6.27.200.

power to enforce a judgment. *Keller,* at 86. We do not address here the question whether punitive sanctions would have been proper for Mr. Musso's actions in defiance of the judgment. Rather, we decide only that the court's coercive order, demanding compliance with the clear intent of the judgment, was proper.

Contempt proceedings to compel compliance with a judicial decree or judgment are not new in Washington law. *See Bradley v. Fowler,* 30 Wn.2d 609, 192 P.2d 969, 2 A.L.R.2d 822 (1948); RCW 26.18.050. In *Decker v. Decker,* 52 Wn.2d 456, 465, 326 P.2d 332 (1958), the court approved of contempt as a remedy to enforce property settlements incorporated into divorce decrees. In *Baskin v. Livers,* 181 Wash. 370, 43 P.2d 42 (1935), the court held landowners were guilty of contempt for damaging and preventing repairs to a pipeline across their property. Neighbors who owned the pipeline had earlier obtained a decree establishing their right to continuous and uninterrupted flow of water, but not specifically ordering the landowner to allow their neighbors to come onto the property to make repairs. Despite this lack of specificity, the court concluded the trial court should have found the landowners in contempt, the "penalty" being an order to prevent future interference with the pipeline. *Baskin,* at 375.

Cases establishing water rights address issues that are somewhat analogous to those in this case. For example, in *Helensdale Water Co. v. Blew,* 146 Wash. 350, 262 P. 958 (1928), the court upheld a contempt judgment for violation of an earlier decree fixing water rights, even though the court found it necessary to interpret one of the decree's terms. *See State ex rel. Roseburg v. Mohar,* 169 Wash. 368, 13 P.2d 454 (1932); *State ex rel. Olding v. Stampfly,* 69 Wash. 368, 125 P. 148 (1912). Similarly, in this case, the April 18, 1986 judgment fixed the rights to the money in Mr. Musso's trust account. Mr. Musso's actions in contravention of those rights established the basis for a contempt order. Our need here to "interpret" the earlier judgment makes the trial court's action no less legitimate, for, as the

court observed in *Helensdale Water Co.*, at 351, "no other conclusion can be reached . . ."

Mr. Musso's conduct in this case goes far beyond the actions of an attorney who entertains legitimate questions regarding the terms of a judicial decree. Judge Luscher on one occasion said Mr. Musso "willfully, intentionally, blatantly" disobeyed the April 18, 1986 judgment. Later, when Mr. Musso asked the court to find that the contempt arose from error, rather than from deliberate conduct, Judge Luscher observed specifically that "you knew you were intelligent in what you were doing, and you chose to do so in a willful manner".

Even when the issues crystallized and the trial court's interpretation of his actions were clear, Mr. Musso made no effort to purge himself of contempt. The contempt judgment, both in substance and in scope, was proper.

■ We now address the trial court's award of attorney fees to the Duerdens. RCW 7.20.100[4] permits attorney fees to aggrieved parties in contempt cases. *Bering v. Share,* 106 Wn.2d 212, 246, 721 P.2d 918 (1986), *cert. dismissed,* 479 U.S. 1050, 93 L. Ed. 2d 990, 107 S. Ct. 940 (1987). While we recognize this statute may not apply directly in cases in which the court exercises its inherent powers, we note that a court's inherent powers are "*at least equal*" to its statutory contempt powers. *Keller,* at 90. The trial court's award of attorney fees was proper.

The Duerdens also have requested attorney fees and expenses on appeal. In *Johnston v. Beneficial Mgt. Corp. of Am.,* 26 Wn. App. 671, 677, 614 P.2d 661 (1980), *rev'd on other grounds,* 96 Wn.2d 708, 638 P.2d 1201 (1982), the

---

[4]RCW 7.20.100:

"If any loss or injury to a party in an action, suit or proceeding prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover of the defendant a sum of money sufficient to indemnify him, and to satisfy his costs and disbursements, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit or proceeding by the aggrieved party for such loss or injury."

court held that RCW 7.20.100 "permits the award of attorneys' fees incurred by a party in defending an appeal of a contempt order", and invoked its "inherent jurisdiction" to set fees on appeal.

The Duerdens have submitted an affidavit of attorney fees and expenses in compliance with RAP 18.1(c). We hold that such an award is appropriate, but some items listed in their attorney's affidavit appear to reflect expenses unrelated to this appeal. We thus remand to the trial court to determine attorney fees and expenses pursuant to RAP 18.1(e).

The judgment is affirmed; and the case is remanded for determination of reasonable attorney fees.

GREEN and MUNSON, JJ., concur.