IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DONALD R. RUSSELL, a married man, | ) | |
| | ) | No. 31946-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA T. AUAYAN and IDA M. | ) | UNPUBLISHED OPINION |
| AUAYAN, husband and wife, | ) | |
| | ) | |
| Appellants. | ) | |

SIDDOWAY, C.J. — Joshua Auayan appeals the trial court's refusal to vacate a

stipulated settlement agreement and dismissal order that concluded Donald Russell's

action against Mr. Auayan and his wife. He argued to the trial court that the stipulated

agreement was substantively unconscionable; violated public policy; was not binding on

his wife, who did not assent to its terms; contained terms not prayed for in the original

complaint; and failed to resolve all of the issues raised in the complaint. Mr. Auayan's

arguments focus on orders and issues he failed to appeal rather than on the irregularities

in procedure contemplated by CR 60.

While the trial court's award of attorney fees and costs for Mr. Auayan's violation of the settlement agreement requires remand for the entry of findings and conclusions, we find no abuse of discretion by the trial court in refusing to vacate the agreement. We affirm that order and the court's order finding the Auayans in contempt. We award Mr. Russell his reasonable fees and costs on appeal.

FACTS AND PROCEDURAL BACKGROUND

This case arises from longstanding disputes between Donald Russell and his neighbors to the north—presently Joshua and Ida Auayan and formerly Mr. Auayan's grandparents, Francisco and Renee Olalia. In prior litigation, Mr. Russell obtained a negotiated decree under which he was authorized to improve a north-south easement to his property from Bittrich-Antler Road in Stevens County. The residential property to the west of the easement was owned by Marty and Diana Balam and the property to the east of the easement was owned by the Olalias and later Mr. Auayan. Among the terms of the decree were that Mr. Russell could build a fence 20 feet east of the west property line of the Olalias' property to accommodate the easement. He was to leave a 20-foot opening in the fence so that the Olalias could use the easement as secondary access into their west yard. The decree ordered the Olalias not to interfere with Mr. Russell's maintenance of the road and easement.

In the years thereafter, Mr. Russell alleges that the Olalia/Auayan families intentionally misused the road he constructed on the easement, resulting in over $1,500 in

2

damage. For that reason, because the Auayans had allegedly harassed him and even threatened to kill him on one occasion, and because Mr. Russell believed the Auayans were in violation of several protective covenants running with the parties' land, Mr. Russell filed a nuisance action in March 2012.

Two copies of Mr. Russell's complaint (one for Mr. Auayan and one for his wife) were personally served on Mr. Auayan at his home. Mr. Auayan entered a pro se notice of appearance on April 13, 2012, which was followed by a notice of appearance for both Mr. and Ms. Auayan filed by two Stevens County lawyers on May 2, and an answer on behalf of both Mr. and Ms. Auayan filed by the same lawyers on May 16.

Trial was scheduled for April 25, 2013. On the morning of trial, Mr. Russell and Mr. Auayan appeared with their lawyers, informed the court that they were engaged in settlement negotiations, and worked through the morning to reach a settlement agreement that they reported to the court in the afternoon. The agreement imposed a number of obligations on both parties, most of which are not germane to the appeal.

It included an agreement by the Auayans to execute a document terminating all their rights to the western 20 feet of their property that was subject to the road easement benefitting Mr. Russell. In exchange, Mr. Russell agreed to dismiss his complaint, to install a new driveway approach on the west end of the Auayan property, and to provide the Auayans with fence posts and spruce trees to plant along the south end of their property.

3

No. 31946-6-III
*Russell v. Auayan*

Once the parties reported to the court that they had reached an agreement, the assigned trial judge, Judge Patrick Monasmith, convened proceedings and reviewed each of the terms of the stipulated settlement agreement with the lawyers, Mr. Auayan, and Mr. Russell. Judge Monasmith was informed that the whereabouts of Ms. Auayan, who was not present in the courtroom, were unknown, and that the parties had agreed to have a commissioner of deeds sign the necessary documents on her behalf.[1] A transcript includes the lawyers' explanation of the circumstances:

> [MR. RUSSELL'S COUNSEL]: The original vesting deed, Your Honor, was to—it was a gift, I think, from [Mr. Auayan's] parents, or grandparents, to him and so—but he is married. They don't even know where his wife is right now. And apparently they did put in a notice of appearance for both parties. And so we just want to bind her and this termination that I'm asking to be signed is one that I'm going to have the Commissioner of Deeds sign and this agreement itself is one I want the Commissioner of Deeds to sign.

> [THE AUAYANS' COUNSEL]: If I may, basically Mr. Auayan and Ms. Auayan have been separated for five—eight years now but they're still technically married. Mr. Auayan obtained the property prior to marriage so it is his separate property, and if Ms. Auayan has any interest in it, it would be in the marital property thereof. So it's just basically to clarify that as being signed off on because we don't know where she is.

Clerk's Papers (CP) at 200–01.

Following the court's review of the agreement with the parties and their lawyers, the lawyers signed and the court entered a stipulation and order appointing Terry

---

[1] *See* chapter 6.28 RCW, dealing with court appointment of commissioners to convey real property when a party is ordered by a judgment to convey.

4

Williams, a local lawyer, as a commissioner of deeds to sign for Ms. Auayan. The parties' lawyers, Mr. Auayan, Mr. Russell, and Mr. Williams then signed a stipulated settlement agreement. Judge Monasmith also signed the stipulated settlement agreement. Both documents were filed on April 25.

A stipulation and an order dismissing Mr. Russell's complaint with prejudice were filed the next day. The stipulation provided that "[a]ny party failing to comply with the fully executed Stipulated Settlement Agreement dated April 25, 2013 may be found in Contempt of Court and ordered to pay costs and Attorneys fees." CP at 96. The order of dismissal included similar language. No appeal was taken from any of the orders or the court-endorsed stipulated settlement agreement filed in April 2013.

A Termination of Easement Rights document had been included as an exhibit to the stipulated settlement agreement, was required to be signed by Mr. Auayan, and was supposed to be delivered to Mr. Russell's lawyer after the satisfaction of certain conditions. When it was not delivered and other terms of the settlement agreement were allegedly violated, Mr. Russell filed a motion for a finding of contempt on July 1, 2013.

On August 2, Mr. Auayan, represented by a new lawyer, moved pursuant to CR 60(b)(1) to vacate the stipulated settlement agreement entered over three months earlier. The motion was supported by a declaration from Mr. Auayan. Two weeks later, he filed a supporting memorandum that added CR 60(b)(5) as a basis for the motion.

5

A hearing was held on August 20 to address the motion to vacate and Mr. Russell's earlier-filed motion for a finding of contempt. On the day of the hearing, Mr. Auayan filed a declaration of Ida Auayan, which stated that she had never seen or agreed to the settlement agreement and did not authorize Mr. Williams to "represent" her. CP at 238. The declaration stated that she supported the vacating of the order. *Id.* But it also stated:

> I had an attorney, as evidenced by the Notice of Appearance executed by Kelsey L. Kittleson, filed on May 2, 2012.

CP at 238. Ms. Kittleson was one of the two lawyers who had filed a notice of appearance and answer on Ms. Auayan's behalf. She had participated in negotiating, presenting and signing the Stipulated Settlement Agreement and related documents.

The hearing on the motions to vacate and for contempt were heard by Judge Allen Nielson. He first heard argument of the motion to vacate and denied it. In doing so, Judge Nielson observed that not only had Judge Monasmith visited the property before the trial date and engaged in a colloquy with the lawyers about the settlement agreement terms, but also:

> at the hearing itself where the agreement is put on the record, [Judge Monasmith] goes through each of the provisions in the agreement in some detail, even making suggestions here and there about improvement and sharpening, understanding by all parties, both sides, as to what they were agreeing to. And he took some 34, 35, 36 pages of transcript to do all this. So it was not cursory or superficial. It was in-depth, careful and well meant.

6

And he, in the course of this hearing, he talked carefully to both sides and then brought out, on the record, that both sides agreed fully with what had been worked out here.

Report of Proceedings (RP) at 14.

Judge Nielson also determined that the terms of the settlement agreement were not unconscionable, explaining that he had considered whether the agreement was "truly one-sided" or involved "taking advantage" of either party and had found "[n]othing of the kind." *Id.* He elaborated:

> This was an agreement that had consideration flowing both ways. Mr. Russell was doing certain things, buying certain things to put on the property. Working together with his neighbors to resolve this long-standing dispute. And the agreement itself served that purpose. It was put upon the record in a sensible, straightforward manner and I don't see anything at that juncture, at this hearing back on April 25, 2013, but a willingness to cooperate and work together at that point. And it looked like it was a win-win for both sides.
>    The Court finds that there's nothing at all unconscionable or there's no discrimination here that I can discern whatsoever. And so I see no basis to vacate the—absence of findings, I don't see any authority for that, that there has to be findings when you have a join[t] agreement that resolves a lawsuit the morning of trial. So I will deny that motion to vacate the agreement.

*Id.* at 14-15.

After denying the motion to vacate, Judge Nielson heard the contempt motion and found Mr. Auayan in contempt. He announced that he would award Mr. Russell his attorney fees and costs based on the parties' earlier agreements and orders and RCW 7.21.030(3), which provides that a court may order a person found in contempt of court

7

"to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees." Following submission of a fee declaration by Mr. Russell's lawyer, the court entered a judgment awarding fees and costs of $3,690.00.

Mr. Auayan filed a notice of appeal on September 17, timely appealing the judgment and the August orders denying the motion to vacate and finding the defendants in contempt.

## ANALYSIS

CR 60(b) provides that on the motion of an aggrieved party a court may relieve a party from a final judgment or order for any of several enumerated reasons. They include among others "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order," CR 60(b)(1), and "[t]he judgment is void." CR 60(b)(5). A trial court's denial of a motion to vacate under CR 60(b) is reviewed for an abuse of discretion. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 697, 41 P.3d 1175 (2002). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Id.* at 684-85.

> An appeal from denial of a CR 60(b) motion is limited to the propriety of the denial *not the impropriety of the underlying judgment.* The exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion.

8

*Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980) (emphasis added).

## *CR 60(b)(5)*

Mr. Auayan first contends that the trial court abused its discretion in refusing to vacate the stipulated settlement agreement because the agreement was "void and unenforceable from its inception" because its terms were substantively unconscionable, violated the Auayans' rights of privacy and quiet enjoyment of their real property in violation of public policy, and were not assented to by Ms. Auayan. Br. of Appellant at viii.

"A void judgment is a 'judgment, decree or order entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved.'" *State ex rel. Turner v. Briggs*, 94 Wn. App. 299, 302-03, 971 P.2d 581 (1999) (quoting *Dike v. Dike*, 75 Wn.2d 1, 7, 448 P.2d 490 (1968)).

The first and second issues of error identified by Mr. Auayan are substantive challenges. They do not call into question the trial court's jurisdiction of the parties or the subject matter, or its inherent power to enter the stipulated settlement agreement or the related orders. They could be challenged only by appeal, and no timely appeal was filed.

In orally ruling on the motion to vacate, Judge Nielson went beyond the scope of a CR 60(b)(5) motion to patiently and persuasively explain why he was satisfied that no substantive error had been made back in April 2013. But as a matter of law, Judge Monasmith's entry of the stipulated settlement agreement and related orders could not be "void" based on their alleged unconscionabililty or violation of public policy.

The third issue—Ms. Auayan's alleged lack of consent—fails for multiple reasons, including Mr. Auayan's lack of standing to raise it and invited error or judicial estoppel, where his lawyer assured the court that the real property at issue was Mr. Auayan's separate property. But it also fails at its inception because Ms. Auayan appeared by her lawyer, whose stipulation was sufficient.

"A written stipulation signed by counsel on both sides of the case is binding on the parties and the court." *Riordan v. Commercial Travelers Mut. Ins. Co.*, 11 Wn. App. 707, 715, 525 P.2d 804 (1974) (citing CR 2A; *Cook v. Vennigerholz*, 44 Wn.2d 612, 269 P.2d 824 (1954)). CR 2A governs stipulations and "requires certain admissions or proof before a trial court can enter a judgment based upon an alleged agreement between the parties and/or their attorneys." *Briggs*, 94 Wn. App. at 303. It provides that

> [n]o agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

CR 2A.

RCW 2.44.010 similarly provides that an attorney has authority to bind his client in any action

> by his or her agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him or her, or signed by the party against whom the same is alleged, or his or her attorney.

RCW 2.44.010(1).

This court's decision in *Briggs* compels the conclusion that Ms. Auayan's lawyer could act on her behalf and that the court's action in reliance is binding on her. In *Briggs*, a father argued that a judgment establishing his paternity and setting child support was void because it was stipulated to by his lawyer, without the client's direct approval. *Briggs*, 94 Wn. App. at 301. But the court held that the requirements of CR 2A were met because the father's lawyer's both stipulated on the record in open court and signed an agreed order, thereby giving the court authority to enter a judgment that was binding. *Id.* at 304. Here, not only did Ms. Auayan's lawyer stipulate on the record in open court and sign the stipulated settlement agreement and associated orders, but she also agreed to the appointment of a commissioner of deeds to execute documents on Ms. Auayan's behalf. No lack of consent is shown.

11

No. 31946-6-III
*Russell v. Auayan*

## *CR 60(b)(1)*

Mr. Auayan also argues that the settlement agreement was obtained by mistake and should have been vacated under CR 60(b)(1) based on Ms. Auayan's absence and the trial court's failure to enter findings of fact and conclusions of law. He makes a seemingly related argument on appeal that the trial court's order contained issues that were not addressed in Mr. Russell's complaint. We have already addressed the sufficient representation of Ms. Auayan.

Mr. Russell's claims were resolved by a stipulated settlement. Had the parties proceeded to trial, Mr. Russell could have sought leave to amend his complaint or the parties could have tried issues not raised in the pleadings by consent and moved to amend the pleadings to conform to the evidence thereafter. CR 15(a), (b). Parties are just as free to enlarge upon issues raised in their original pleadings when they settle as they are to enlarge upon the original issues when they try a case. No mistake is shown.

As to the trial court's asserted failure to enter findings of fact or conclusions of law, none were required. The complaint was dismissed with prejudice by the parties' agreement. Findings and conclusions are required by CR 52(a)(1) only in "actions *tried upon the facts* without a jury or with an advisory jury." Again, no mistake is shown.

### *Lack of findings supporting attorney fee award*

Finally, Mr. Auayan assigns error to the failure of the trial court to enter findings and conclusions in support of its award of attorney fees to Mr. Russell for bringing the

12

motion for contempt. He relies on *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998).

Where attorney fees are recoverable, Washington courts apply the lodestar method to determine the reasonably recoverable amount. The trial court must enter findings of fact and conclusions of law supporting the fee award. *Id.* at 434-35. The findings are necessary for an appellate court to review the award. *Bentzen v. Demmons*, 68 Wn. App. 339, 350, 842 P.2d 1015 (1993). Where a trial court fails to create the appropriate record, remand for entry of proper findings and conclusions is the appropriate remedy. *Mahler*, 135 Wn.2d at 435.

Because the trial court failed to make any findings and conclusions supporting the amount of fees and costs awarded, remand is required.

### *Attorney fees on appeal*

Both parties request an award of attorney fees on appeal. RAP 18.1 permits recovery of reasonable attorney fees or expenses on review if applicable law grants that right. Mr. Auayan bases his attorney fee request on the declaration of protective covenants running with his and Mr. Russell's land, which provides that owners having rights under the covenants may "recover any damages resulting from [a] violation, together with reasonable attorney's fees." CP at 30. Mr. Auayan has not demonstrated a violation of the covenants by Mr. Russell.

13

No. 31946-6-III
*Russell v. Auayan*

Mr. Russell requests attorney fees on appeal relying on the contempt statute, RCW 7.21.030(3). A party defending an appeal of a contempt order may be awarded his attorney fees. *R/L Assoc., Inc. v. City of Seattle*, 113 Wn.2d 402, 413, 780 P.2d 838 (1989); *Graves v. Duerden*, 51 Wn. App. 642, 652, 754 P.2d 1027 (1988). Mr. Russell is entitled to an award of fees and costs on appeal.

We reverse the trial court's judgment awarding $3,690.00 in attorney fees and costs and remand for the entry of findings and conclusions, otherwise affirm, and award Mr. Russell his reasonable fees and costs on appeal subject to his compliance with RAP 18.1(d).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

14