# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>ASHLEY ELIZABETH BURKS,<br><br>                 Respondent,<br><br>    and<br><br>TRENT NELSON,<br><br>                 Appellant. | No. 57679-1-II<br><br>UNPUBLISHED OPINION |
| ASHLEY ELIZABETH BURKS,<br><br>                 Respondent,<br><br>    v.<br><br>REBEKAH YOUNG,<br><br>                 Appellant. | |

PRICE, J — Attorney Rebekah Young appeals the superior court's order finding her in contempt for violating a protective order. The protective order was imposed in a dissolution action between Young's former client, Trent Nelson, and his then-spouse, Ashley Burks.

During the dissolution action, there were allegations that Nelson was misusing Burks' financial information. In response to these allegations, the superior court issued a protective order to prevent dissemination of Burks' financial information.

While Young was representing Nelson, the protective order required her to monitor Nelson's access to Burks' financial materials. But when Young later withdrew as Nelson's attorney, the superior court issued an amended protective order that somewhat changed the procedures for protecting the financial information.

At some point, Burks believed that both Nelson and Young had violated the original and amended protective orders. The superior court agreed with Burks, found Nelson and Young in contempt, and ordered them to pay Burks' attorney fees for bringing her contempt motion. Both Young and Nelson separately appeal.[1]

In this appeal, Young argues her conduct did not violate the superior court's protective orders. Young also argues that even if her conduct did violate the protective orders, Burks' motion was moot and she was not afforded the appropriate due process for the type of contempt Burks requested.

We reverse and hold that the superior court abused its discretion when it concluded that Young's conduct violated the superior court's protective orders.

FACTS

I. PROTECTIVE ORDERS

Burks initiated dissolution proceedings to dissolve her marriage with Nelson in September 2021. Nelson retained Young to represent him in the dissolution.

The dissolution proceedings did not go smoothly. Burks was a local business person, and she became concerned that Nelson might misuse her business-related financial information

---

[1] Nelson's appeal of the superior court's contempt order is the subject of a separate, linked appeal before us (No. 57672-4-II).

disclosed during discovery. In February 2022, Burks moved for a protective order "prohibiting [Nelson] from using any information received through [] discovery for any other purpose than this proceeding" and that those materials be marked confidential. Clerk's Papers (CP) at 53.

In March, the superior court granted the motion and imposed a protective order. The March protective order required that materials designated as " 'Confidential' " (including business records like tax returns, bank records, and client and shareholder lists), "only be provided to a third party such as an expert witness or consultant or any other legitimate litigation support personnel." CP at 147-48. The superior court also described the procedure Nelson could use to access the confidential materials:

> *Business records or confidential information described herein shall not be provided to Respondent. Respondent may view confidential materials in the presence of his attorneys at their office and shall not take images.*

CP at 148 (emphasis added). After the March protective order was in place and while Young was still representing Nelson, Young was always with Nelson while he viewed the confidential materials.

But later that same month, Young and her law firm withdrew from representing Nelson. As a result of the loss of his lawyer, Nelson moved, pro se, to amend the March protective order. Nelson contended he needed an alternative method to view the confidential materials now that Young would no longer be available to monitor his review of Burks' confidential materials. Nelson requested an amendment to the procedure (italicized above), explaining,

> Removal of this clause is necessary now that I am proceeding with my case pro se. I no longer have attorneys, and thus, no means of access to Petitioner's discovery information. Without access to Petitioner's discovery information, I am unable to conduct complete a [sic] thorough evaluation of Ms. Burks' discovery responses and our community assets.

CP at 155 (boldface omitted).

Burks objected to the motion and advocated for a "special master to hold the discovery for [Nelson]." 2 Verbatim Rep. of Proc. (VRP) at 56.

In April, the superior court considered Nelson's motion to amend the March protective order. The superior court rejected Burks' request for a special master, but it agreed to modify the protective order. The superior court explained,

> My options are right now I do nothing or it stays the same. I modify it in some respect, which I may be inclined to modify in one limited respect, to tell you that you could view the documents that have been produced at your lawyer's office. And if that requires you to pay for the time to do so, then you do that. Or you can, similarly, review the documents at [Burks' attorney's] office in her conference room without taking copies of images.
>
> . . . .
>
> But I'm not going to modify it to allow unfettered access. I'm not going to modify the protective order. I will simply indicate that I would encourage you to re-think whether you should -- re-think the possibility of hiring counsel to be of some assistance. I appreciate that things are getting expensive, especially if you've paid $100,000 in a case such as this. I appreciate that concern. It's a concern that I hear often.

2 VRP at 60-61.

Nelson asked for clarification of where he could access the confidential materials and what notes he could take, and the following colloquy took place:

> THE COURT: You may not take screenshots. You may review and digest the information that has been presented. You may take -- you may then take your notes and put them on a laptop. You may take handwritten notes in anticipation for preparation for your trial.
>
> MR. NELSON: I would be more than willing to do that at my prior attorney's office. They would probably allow me to do that without a significant charge. I think the way that it was currently written is that I actually had a notepad -- they

4

gave me a little notepad, and the notepad had to stay at the attorney's office. . . . I can't do anything with that. If we were able to adjust that --

THE COURT: Your notes -- well, I will tell you this, that if I find -- I will warn you that if I find that you have read a bank statement and you go out on April 3rd, 2022 and say she deposited "X" or she spent "Y" and that's disseminated to third parties, that violates my protective order.

2 VRP at 62-63.

On April 22, 2022, the superior court entered its amended protective order. The April amended protective order was handwritten and short; it stated that the original March protective order would remain in full effect, except that:

> Any CPA or business evaluation expert may receive confidential documents so long as they sign the protective order and agree to be held responsible for any violations thereof.

> Mr. Nelson may view these documents in his prior attorney[']s office or in [Burks' attorney's] office but shall not take images of any kind (screenshot, photo, video) but he may take notes. Notes taken by Mr. Nelson shall be treated as confidential information and shall not be disseminated to third parties outside of attorneys of record, business valuation experts, CPA's or the court.

CP at 201-02.

II. NELSON'S FILE ACCESS AFTER THE APRIL AMENDED PROTECTIVE ORDER

After Young consulted with her colleagues on how to best abide by the two protective orders—the original March protective order and the April amended protective order—she stressed to Nelson the importance of strictly following the orders and reminded Nelson multiple times about the requirements.

Nelson began viewing the materials at Young's office, although she was not usually in the room with him. Nelson initially used a computer provided by the law firm to view electronic versions of the materials. Young did not impose any procedures that would have prevented Nelson

from copying confidential materials; Young merely relied on Nelson's word that he was not copying the materials in violation of the protective orders.

Nelson eventually began bringing his personal laptop for his review and accessed the confidential materials from a USB drive. Each time Nelson visited Young's office, he would retrieve the USB drive from Young and return the drive when he left. Nelson spent about 185 hours at Young's office during his review of the materials. Although Young was not in the same room with Nelson, she was always present at the office when he was there.

III. CONTEMPT PROCEEDINGS

In July 2022, Burks filed a motion for contempt against Young and Nelson for violating the two protective orders. Burks alleged that it was a violation for Young to provide Nelson with a USB drive of all the financial materials while she was in a different room of her office. Burks also explained she believed Nelson uploaded confidential materials to his personal laptop and, from there, uploaded those materials to an online file-sharing drive for a hired financial expert's review. Burks contended that the confidential materials were thereafter readily available to Nelson and that he effectively copied the confidential materials when he prepared spreadsheets of the data using software on his computer. Thus, Burks asked the superior court to find Young and Nelson in contempt.

On September 9, the superior court held an evidentiary hearing on the contempt motion.[2] Both Young and Nelson testified consistently with the above facts. Young testified that she

---

[2] The hearing on the motion for contempt was scheduled after the trial for Burks and Nelson's dissolution. During the dissolution trial, the superior court referenced the pending contempt hearing, stating, "[W]e've got a special set motion to determine whether you [(Nelson)] and your

believed that being present at her office while Nelson reviewed confidential materials, even if she was not necessarily in the same room, was enough to comply with the language of the April amended order. And Nelson explained that he never saved any materials to his personal computer or a file-sharing drive that he could have thereafter accessed.

Two months after the evidentiary hearing, the superior court gave an oral ruling on Burks' motion, finding both Young and Nelson in contempt. The superior court explained that although Nelson wanted to remove the requirement that he could only view materials in " 'the presence of his attorney' " after Young withdrew, the superior court believed that requirement was still in place from the original March protective order. 6 VRP at 213. The superior court's later-filed written order included, in relevant part, the following findings of fact:

> 1. When asked for assurances by [Burks' counsel] that the Protective Order was being followed, Ms. Young asserted that Mr. Nelson was only being allowed to review confidential documents in her presence, on a confidential laptop and that he had not been permitted to review documents without their presence.
>
> 2. Ms. Young's testimony confirmed that the protocols identified in paragraph 1 [(the previous paragraph)] were initially followed.
>
> 3. The protocols recited in paragraph 1 above are consistent with the Protective Order as amended and demonstrate Ms. Young's understanding of the terms and restrictions contained within the Protective Orders.
>
> 4. This protocol changed sometime after Ms. Young withdrew her representation of Mr. Nelson. Ms. Young testified that she was not an "indentured servant;" however, working at a for-profit law firm does not absolve an attorney of obligations owed as an officer of the court.
>
> 5. After her withdrawal as counsel, Ms. Young no longer supervised Mr. Nelson['s] review of confidential information.

---

lawyer have violated the spirit or the intent or the actual terms of a protective order." 4 VRP at 112-13.

6. Rather, Ms. Young provided Mr. Nelson with an unencrypted thumb drive with confidential documents for his unsupervised review in her office, which is no different than giving him hard copies except that it might be more readily available to disseminate.

. . . .

10. Ms. Young and Mr. Nelson are in contempt of the March 16, 2022 Protective Order as well as the April 8, 2022 Order.

CP at 506-08.

Young appeals.

## ANALYSIS

### I. CONTEMPT FINDING WAS AN ABUSE OF DISCRETION

Young argues that the superior court abused its discretion by determining that her actions constituted contempt. We agree.

#### A. LEGAL PRINCIPLES

We review the superior court's decision on a contempt motion for an abuse of discretion. *See, e.g.*, *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). An "abuse of discretion" is present if there is a clear showing that exercise of discretion was manifestly unreasonable or based on untenable grounds or reasons. *Id.*

A court cannot hold a person in contempt for disobeying an order unless the facts constitute a "plain violation of the order." *Johnston v. Beneficial Mgmt. Corp. of Am.*, 96 Wn.2d 708, 713, 638 P.2d 1201 (1982). In contempt proceedings, courts strictly construe the language of the order that is the basis for the contempt motion in favor of an alleged contemnor. *Graves v. Duerden*, 51 Wn. App. 642, 647, 754 P.2d 1027 (1988); *Dep't of Ecology v. Tiger Oil Corp.*, 166 Wn. App. 720, 768, 271 P.3d 331 (2012). "The purpose for this rule is to protect persons from contempt

8

proceedings based on violation of judicial decrees that are unclear or ambiguous, or that fail to explain precisely what must be done." *Graves*, 51 Wn. App. at 647-48.

B.  APPLICATION

Young argues that the superior court did not strictly construe the protective orders in her favor when it determined she was in contempt for Nelson's electronic review of the financial materials.  Young emphasizes that the April amended order removed any requirement that she be present in the same room with Nelson.  And Young argues the protective orders did not prohibit Young from allowing Nelson to view the materials in an electronic format.

We consider Young's arguments in four steps.  First, we restate the precise language of the two protective orders.  Second, we briefly restate and review the superior court's contempt order rationale to discern how it interpreted the language of its orders.  Third, we apply a strict construction in favor of Young to the language of the protective orders to determine what was clearly prohibited and whether those prohibitions comported with the superior court's expectations.  Finally, we compare those prohibitions of the protective orders (when strictly construed) with Young's conduct to determine whether she "plain[ly]" violated the orders.  *See Johnston*, 96 Wn.2d at 713.

1.  Protective Orders' Language

We begin with a close reading of the superior court's two protective orders.  The original March protective order, entered when Young was actively representing Nelson, stated that Nelson was allowed to view the materials only with his attorney's direct supervision:

> Business records or confidential information described herein shall not be provided to Respondent.  Respondent may view confidential materials *in the presence of his attorneys at their office* and shall not take images.

9

CP at 148 (emphasis added).  The short April amended order stated that the March protective order "shall remain in full force and effect," except it provided that Nelson could view the materials "in his prior attorney[']s office."  CP at 201-02.  Its specific language read:

> Mr. Nelson may view these documents *in his prior attorney[']s office* or in [Burks' attorney's] office but shall not take images of any kind (screenshot, photo, video) but he may take notes.  Notes taken by Mr. Nelson shall be treated as confidential information and shall not be disseminated to third parties outside of attorneys of record, business valuation experts, CPA's or the court.

CP at 201-02 (emphasis added).

### 2.  Superior Court's Decision on Contempt

With that amended language in place, the superior court was still apparently convinced that when Young allowed Nelson to view the materials in an electronic manner in her office, but not with her present in the room, she violated the orders.  As seen from both its oral comments and written contempt order, the superior court appeared to believe that the April amended order did not remove the requirement that Young directly supervise Nelson's review of the financial materials.  *See* 6 VRP at 215 (oral comments at contempt decision hearing) ("Ultimately, the Court did not modify the aforementioned restrictions [(for supervision)] in the protective order . . . ."); CP at 507 (paragraph 3 of the written contempt order) ("The protocols recited in paragraph 1 above are *consistent with the Protective Order as amended* and demonstrate Ms. Young's understanding of the terms and *restrictions contained within the Protective Orders*." (emphasis added)).

And as noted above, the superior court's written contempt order showed that the superior court appeared to believe that the protective orders did not permit Young to provide the materials to Nelson on a USB drive for electronic viewing.  CP at 507 ("Ms. Young provided Mr. Nelson

with an unencrypted thumb drive with confidential documents for his unsupervised review in her office, which is no different than giving him hard copies except that it might be more readily available to disseminate.")  Thus, the superior court determined Young violated the March protective order and the April amended protective order.

    3.  Construction of the Protective Orders

But contempt must be supported by strict construction of court orders in favor of alleged potential contemnors.  *See Graves*, 51 Wn. App. at 647; *Tiger Oil Corp*., 166 Wn. App. at 768. Although the superior court believed specific actions were required of Young, the two protective orders collectively did not, on their faces, match the superior court's expectations.

Specific to Young, there are two main questions: (1) what did the orders require with respect to whether Young needed to be physically with Nelson while he reviewed the confidential materials and (2) what, if anything, did the orders impose on Young in terms of an obligation to provide the documents to Nelson in a particular format or to ensure Nelson did not wrongfully copy Burks' materials.

First, regarding being present with Nelson, the April amended order appeared, on its face, to remove the requirement that Young directly supervise the review of the financial materials.  The original protective order specifically required that materials "not be provided to" Nelson, but allowed Nelson to "view confidential materials *in the presence of his attorneys* at their office." CP at 148 (emphasis added).  But the April amended order stated that the original protective order would remain in full effect, "except that":

> *Mr. Nelson may view these documents in his prior attorney[']s office or in [Burks' attorney's] office* but shall not take images of any kind (screenshot, photo, video) but he may take notes.  Notes taken by Mr. Nelson shall be treated as confidential

11

information and shall not be disseminated to third parties outside of attorneys of record, business valuation experts, CPA's or the court.

CP at 201-02 (emphasis added). Even though much of the original March protective order remained in place, this portion of the April amended order spoke directly to the location of Nelson's review—in "his prior attorney[']s office." CP at 202. Unlike the March order, the provision says nothing about being in the "presence" of his attorneys. By speaking to the same issue (where to conduct his review) but removing the requirement of "presence" of his attorneys, the April amended order, strictly construed in favor of Young, effectively replaced the presence requirement of the March order.

Strictly construed, then, the April amended order permitted Nelson to view the materials so long as he was at his attorney's office; it did not require Young to be present with Nelson or oversee his review of confidential materials.

Second, regarding an obligation to provide the materials in a particular format or to ensure Nelson did not wrongfully copy materials, the two protective orders did not impose a particular method that Young must have employed to facilitate Nelson's materials review, electronic or otherwise. The original March order explained that Nelson could view the confidential materials, and the April amended order again merely stated that Nelson could view the materials. Nothing on the face of the orders imposed an obligation on Young to ensure Nelson used a specific medium for his review or to guarantee Nelson abided by the orders' prohibitions.

Thus, when properly construed in favor of Young, the language of the two protective orders did not reflect the superior court's expansive prohibitions that were applied in the contempt order. *See Graves*, 51 Wn. App. at 647-48 (alleged contemnors are protected from contempt proceedings

12

based of orders that are "unclear or ambiguous, or that fail to explain precisely what must be done."); *Tiger Oil Corp.*, 166 Wn. App. at 768 (order must be construed in favor of the alleged contemnor). The protective orders, strictly construed, obligated Young to do little more than ensure that Nelson reviewed the materials at her law firm's offices.

4. Young's Actions Did Not Violate the Protective Orders

Comparing, then, Young's supervision of Nelson and method of providing him with the confidential materials with the strictly construed language of the two protective orders, Young's conduct did not violate the orders. Before the April amended order was entered, Young always directly supervised Nelson's review of the materials; after the April order, she was always present at her firm's offices during Nelson's review, just not usually in the same room with him. Those actions aligned with the language of the protective orders (strictly construed). And Young initially provided Nelson with a computer to electronically view the materials, and later provided him with a USB drive that Nelson checked out on arrival at Young's office and returned before his departure. When there was no particular format or mechanism mandated for Nelson's materials review, Young's actions also did not violate the language of the protective orders.[3]

---

[3] Young's argument, and Burks' response, partially frame this appeal as a challenge to the superior court's findings of fact in its contempt order listed above (findings of fact 1 through 6) and others not referenced in this opinion (findings of fact 7 through 9). We view this appeal as more fundamentally challenging the superior court's construction of the underlying protective orders. For example, even if the findings of fact in the contempt order were supported by substantial evidence and even if those findings supported the superior court's conclusions of law, the order would still be an abuse of discretion if it was the product of failing to strictly construe the underlying protection orders.

It is true that Young's actions did not comport with the superior court's subjective view of what it ordered. The superior court clearly expected that Young would continue to directly supervise Nelson, not provide the documents electronically, and take affirmative steps to otherwise ensure that Nelson did not wrongfully copy Burks' materials. We understand the superior court's frustration when those subjective expectations were not followed, especially when those expectations were justifiably intended to prevent dissemination of sensitive information.

But the specific language of these two protective orders, when properly construed in Young's favor, do not match those intentions. Because Young's actions did not "plain[ly]" violate the restrictions in the protective orders, the superior court abused its discretion in finding Young in contempt. *See Johnston*, 96 Wn.2d at 713.[4]

II.  ATTORNEY FEES

Burks requests attorney fees for this appeal under RAP 18.1(a) and RCW 7.21.030(3).[5] The rule allows us to award attorney fees if applicable law allows. RAP 18.1(a). And the statute allows courts to award attorney fees when a person has been found in contempt of court. RCW 7.21.030(3). Because we reverse the order finding Young in contempt, we deny Burks' request for attorney fees; no contempt remains to justify the award.

---

[4] Young also argues, in the alternative, that the superior court erred in determining Burks' motion for contempt was not moot and that she was not afforded the appropriate due process for the type of contempt Burks requested. Because we reverse on other grounds, we do not address these arguments.

[5] Young does not request an award of attorney fees for this appeal.

CONCLUSION

We reverse, holding that the superior court abused its discretion in finding Young in contempt when her actions did not violate the requirements of the protective orders.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

LEE, J.